Richard D. Simons, J.
This is an action by the plaintiffs as Councilmen and taxpayers of the City of Utica, New York seeking a declaratory judgment determining that Ordinance No. 399 of the City of Utica passed July 10, 1965 is illegal and void, and requesting the issuance of an injunction restraining the defendants from purchasing the assets of the Utica Transit Corporation. The amended complaint also set forth a cause of *19 action alleging waste of public property pursuant to section 22 of the Second Class Cities Law. During the course of trial, on motion of defendants, these allegations of waste and the testimony relating to that part of the case were stricken with the consent of the plaintiffs.
This action stems from efforts by the defendants to preserve bus service for the City of Utica. In August, 1964, the city administration was informed by representatives of the Utica Transit Corporation that it intended to discontinue operation of its bus lines effective May 1, 1965. That corporation operates buses in the City of Utica, the Village and Town of New Hartford and the Villages of Whitesboro, New York Mills, Yorkville, Frankfort and Clinton and the Towns of Marcy and Kirkland under various franchises.
Thereafter, the city administration set up a special transit committee consisting of two Councilmen, an Assistant Corporation Counsel and two private citizens charged with the responsibility of investigating what steps could be taken to provide mass transit facilities for the city. Following several months of study, the committee reported to the Common Council June 16, 1965 and recommended the acquisition of certain assets of the Utica Transit Corporation by the city and the continued operation of the buses under city ownership. The purchase was to include all rolling stock, real estate and improvements, service equipment, office supplies and replacement parts, and franchises. These assets had been appraised at a value of $914,675. The corporation agreed to sell them to the city for the sum of $740,000.
On July 10,1965, the Common Council adopted Ordinance No. 399 by a vote of 6 to 3. That ordinance directed the Mayor to enter into a contract for the purchase of the corporation’s assets for the sum of $740,000 “ contingent upon the city’s being able to pay its share of the purchase price by issuance of bonds when and if the Federal Government has approved said contract, and agreed to finance the acquisition up to at least 50% of the total cost and all other contingencies are satisfied.” Such a contract was executed July 20, 1965 and is presently in effect.
Ordinance No. 409 adopted July 21, 1965 amended Ordinance No. 399 by providing that the city might finance, its share of the purchase price by the issuance of “ notes and/or” bonds. On August 4, 1965, Local Law No. 6 was passed which created a Transit Commission to implement the proposed acquisition and operation of the bus service. An application for Federal funds has been made and tentatively approved under the pro *20 visions of the Urban Mass Transportation Act of 1964 (U. S. Code, tit. 49, § 1601 et seq.).
Plaintiffs challenge the legality of these actions on several grounds.
1. Municipalities are empowered to acquire, own and operate transit facilities. (N. Y. Const., art. IX, § 2, snbd. [c], par. [7]; Municipal Home Rule Law, § 10, snbd. 1, par. [ii], subpar. a, cl. [7].) The Common Council of the City of Utica authorized the Mayor to enter into a contract for the purchase of certain assets of Utica Transit Corporation by Ordinance No. 399 and authorized the purchase of the Utica Transit facilities and the operation of them by a Transit Commission by Local Law No. 6 adopted August 4, 1965 and approved by the Mayor August 18, 1965. The contract executed by the city pursuant to this authority was not ultra vires.
2. Nevertheless, the petitioners argue that the power thus conferred was improperly exercised because Ordinances No. 399 and 409 propose the use of city credit to effectuate the acquisition of a bus company contrary to subdivision a of section 11.00 of the Local Finance Law.
At the outset it should be recognized that Ordinance No. 399 is nothing more than authorization to the Mayor to enter into a contract of purchase contingent on a specified method of financing. Ordinance No. 409 amended Ordinance No. 399 to provide for payment of the city’s share by “notes and/or ” bonds. Ordinance No. 409 contravenes section 35 of the Second Class Cities Law and is, therefore, void since it was adopted the same day it was introduced, without unanimous consent; but that does not in any way destroy the power granted to the Mayor to execute the contract by Ordinance No. 399. These ordinances were not in any sense bonding ordinances nor were they intended to be. There was no attempt to provide the necessary prerequisites set forth in section 32.00 of the Local Finance Law in regard to purpose, cost, useful life, description, amortization, etc. The conditions concerning financing arrangements specified in the ordinances were inserted in the contract at the city’s behest and for the city’s protection and benefit and these conditions may be waived by the city by appropriate action if it is unable or unwilling to perform in that respect. (10 N. Y. Jur., Contracts, § 351.)
3. Next, plaintiffs point out that rule 9 of the Rules of Order of the Common Council requires two weeks’ notice to the Council of legislation having the effect of ‘ ‘ giving, granting, changing or extending ” any franchise. The assailed legislation does not run afoul of this rule. It did not change the franchises *21 in any way. The Utica Transit Corporation operates its bus franchises now after passage of Ordinance No. 399, in exactly the same fashion as it did before.
It is the conclusion of the court that the defendants’ actions up to the present time, with the exception of Ordinance No. 409, are valid and binding.
The plaintiffs urge that these actions portend fiscal operations that are proscribed by statute and that they are entitled to a declaratory judgment to that effect and to an injunction restraining defendants from acting unlawfully in their future efforts to acquire the assets.
The route to be followed by the city in acquiring a transportation system has been laid out by its administration. It is the intention of the city to borrow funds to pay its portion of the cost. It is the proper function of a declaratory judgment action to stabilize uncertain relations as to present or prospective obligations when possible and set controversies at rest-before harm is done. (22 Carmody-Wait, New York Practice, Declaratory Judgments, § 1.) If there is no conceivable way that the city can borrow funds to make this acquisition, then defendants should be enjoined before they make abortive attempts to do so.
4. The plaintiffs say that bonding to pay for these assets is forbidden since in effect it is the purchase of a “ bus company ” and nowhere in section 11.00 of the Local Finance Law is any period of probable usefulness for such a purpose set forth. Because the statute is silent as to bus companies, plaintiffs argue that the defendants are precluded from borrowing to pay for this purchase.
It is hornbook law that the power of a municipality to contract indebtedness cannot be implied. There must be a specific grant by the Legislature. (See N. Y. Const., art. IX, § 2, subd. [c], par. [4]; Local Finance Law, § 10.00; Municipal Home Rule Law, § 10, subd. 1, par. [ii], subpar. a, cl. [4].) Thus, while municipalities are authorized to pursue a great variety of legitimate activities, if funds are to be borrowed to pay the cost of those activities, the debt must be contracted strictly in accord with the applicable law. One of the requirements for contracting indebtedness is that the obligations must be amortized during a period of probable usefulness not longer than that specified in section 11.00 of the Local Finance Law for such object or purpose.
'Specifically, the items Utica Transit Corporation contracted to sell and the consideration for each as set forth in the report of the Transit Committee are as follows: 1. Buses, $350,000; *22 2. Office equipment, supplies, tools and spare parts and service equipment consisting of a sedan and two pickup trucks, $71,700; 3. Two groups of real property for a total price of $318,300; and 4. Franchises — no consideration. Of this total purchase price, the city’s share, presuming Federal contribution, will be $370,000, a sum of money not so large as to foreclose financing by short-term notes, or even if the need should be imperative, to be paid out of current revenues. But assuming that the city takes the position that it must bond for the entire sum, then it is clear that while section 11.00 of the Local Finance Law does not set forth a period of probable usefulness for a “ bus company”, it does for motor vehicles (subd. a, par. 29), real estate and improvements (subd. a, pars. 11, 21), and equipment for the buildings (subd. a, pars. 11, 32). The only offending items would seem to be the pickup trucks, the sedan and the replacement parts. These items would have to be financed through notes or current revenues.
To belabor the argument as to whether this is the purchase of a “ bus company” or only specific assets seems futile. There is no purchase of the corporation’s securities, no assumption of liabilities, no purchase of good will, and no concession or agreement as to employees or personnel. In short, the city is buying the bare bones of the business, it is not taking over the corporation. It seems incredible to assume that while the Legislature has authorized borrowing to finance the purchase of these various items individually, it has foreclosed the city from buying them in combination when various statutes specifically authorize the acquisition of transit facilities. To the extent that vehicles and parts not authorized under section 11.00 are included, it will be necessary that the city undertake alternative methods of financing to cover those items; but it is clearly possible to legally finance the purchase of these assets. The fact that Ordinance No. 399 and the contract of purchase call for the issuance of bonds should not prevent the city from ■adopting alternative methods of financing which comply with the statutes.
5. The Constitution prohibits contracting a debt for a period longer than the period of probable usefulness of the object or purpose for which such indebtedness is contracted. (N. Y. Const., art. VIII, § 2.) The plaintiffs assert generally that some of the vehicles to be purchased are more than five years old and that some of the buildings are of substantial age and therefore, these items have already exceeded the periods of probable usefulness as set forth in the statute.
*23 The Local Finance Law (§ 11.00, subd. b) provides that the finance board shall determine the period of probable usefulness but in no event shall the period exceed the maximum set forth in subdivision a of section 11.00. If chronological age were the sole test, very few, if any, items would be purchased secondhand. Municipal officials could rest easy with the assurance that their sworn duty foreclosed the purchase of anything but new equipment and newly constructed buildings. That is not the intendment of the statute. What is called for is a realistic appraisal of the economic life of the facility or equipment which is not less than the amortization period of the bond. The purpose of the statute is to prevent public officials from paying for today’s needs with tomorrow’s income. (Cf. Bugeja v. City of New York, 24 A D 2d 151, dissent; Cherey v. City of Long Beach, 282 N. Y. 382.) The statute compels municipal officers to recognize this duty by conscientiously amortizing the life of the bonds over the probable life of the object or purpose. There must be a determination that the object or purpose will be useful in the future as well as in the immediate present. The chronological age of the buses and the realty is only one factor to be considered in malting this judgment.
6. It is pointed out that some of the franchises to be acquired are for areas outside of Utica. From this, plaintiffs draw two conclusions. First, that the city may relinquish these franchises, thus becoming exposed to a suit for the tortious wrong of interfering with the contract rights of another, i.e., the particular village or town that granted the franchise, and second, that in the event the city does not relinquish these franchises, nonresidents who pay no taxes to support the buses will ride for the same fares as those residents of Utica who do pay taxes, thereby enjoying an unfair and illegal advantage. (Some of the town franchises require parity of fares with those charged in the City of Utica.) This is pure speculation. What action, if any, will be taken with respect to the franchises remains to be seen. There may well be a municipal purpose in operating bus lines outside the city limits to transport nonresidents to Utica to shop and work as well as to transport residents to the outside areas for their personal pursuits. (Cf. Matter of Mayor etc. of City of N. Y., 99 N. Y. 569, 589-590; People ex rel. Murphy v. Kelly, 76 N. Y. 475, 487-489.) The possibility of amicable renegotiation or relinquishment of the franchises is not foreclosed. These decisions are for the future.
7. Finally, plaintiffs charge that the Public Service Commission has not approved the transfer. (Cf. Public Service Law, *24 §§ 63, 63-d.) This point also is premature. That statute requires the transferor to obtain the permission of the commission before transferring a franchise. (Spring Brook Water Co. v. Village of Hudson Falls, 269 App. Div. 515, mot. for lv. to app. den. 295 N. Y. 993.) The transit corporation has agreed to take all action necessary to comply with State laws for transfer.
The injunction is denied.