Steven B. Derounian, J.
Plaintiffs are omnibus corporations organized under the Transportation Corporations Law of New York ¡State, engaged in operating bus routes in Nassau County and in intercounty routes between Nassau and Queens or Nassau and Suffolk Counties. Some of the plaintiffs have operated the same routes since 1925, pursuant to order of the Public Service Commission of the State of New York, granting them a certificate of public convenience and necessity.
Defendants are the County Executive, and members of the Board of Supervisors of Nassau County, and the County Director of Franchises.
The plaintiffs’ operations are• subject to the provisions of subdivision 1 of section 63-d of article 3-A of the Public Service Law, which provides, in' part, as follows: “ No omnibus corporation shall operate an omnibus line without first having obtained the permission and approval of the commission and its certificate of public convenience and necessity, after a hearing had upon notice. ’■’
In addition, subdivision 2 of section 63-d of the Public Service Law provides, in part, as follows: ‘ ‘ Except as otherwise provided in section sixty-three-e, no such certificate of public convenience and necessity shall be issued until there be filed in the •office of the commission by the applicant therefore a verified statement showing that the required consent of the proper city or other municipal authorities has been obtained as required by the transportation corporations law or in the county of Nassau by the county government law of Nassau county.” Subdivision 2 of section 63-d specifies the local consent as a condition precedent to filing an application with the Public Service Commission (hereinafter referred to as “ P.S.C.”) for a certificate of public convenience and necessity.
To obtain the consent required ¡by subdivision 2 of section 63-d of the Public 'Service Law, plaintiffs applied to the Nassau County Board of .Supervisors, pursuant to article XIV of the County Government Law of Nassau County, subdivision 2 of section 1401, which provides as follows: ‘ ‘ No stage, omnibus *933 line, stage route, motor vehicle line or route, nor any vehicle in connection therewith, and no vehicle carrying passengers upon a designated route or routes within the limits of the county shall be operated wholly or partly upon or along any street, avenue or public place in the county, nor shall a certificate of public convenience and necessity be issued therefor, until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the board of supervisors to such operation, upon such terms and conditions as said board may prescribe. Such terms and conditions may include provisions relating to description of route, rate of speed, compensation for wear and tear of pavement of routes and bridges, and safeguarding passengers and persons using the streets. Operation upon the streets of the county shall not be permitted until the owner or operator of such vehicles or proposed line or route, if required by the board of supervisors, shall have executed and delivered a bond to the county in an amount fixed by such board and in form prescribed by the county attorney with sureties satisfactory to the comptroller, which bond may be required to provide adequate security for the prompt payment of any sum accruing to the county, the performance of any other obligations under the terms and conditions of such consent, as well as for the payment by such owner of any damages occurring to, or judgments recovered by, any person on account of the operation of such line, route or vehicles. 'However, no such consent shall be granted by the board of supervisors for a route wholly within a single city or village unless the previous consent in writing by the governing board of such city or village shall have been filed with the board of supervisors. No consent shall be given by the board of supervisors for a route or routes over a city or village street unless the previous consent in writing by such village or city shall have been filed with the board of supervisors. The requirement for consent by a city or village shall not be deemed to restrict the board of supervisors from giving a consent for the operation of any such vehicle over any state, county or town highway or road. Sections sixty-six, sixty-seven, sixty-eight and sixty-nine of the transportation corporations law conferring upon cities, towns and villages the power to grant consents and terminable permits shall not apply to cities, towns and villages in the county of Nassau.” (L. 1936, ch. 879, as amd. by L. 1950, ch. 755; emphasis supplied.)
Prior to the enactment of chapter 755 of the Laws of 1950, some of the plaintiffs obtained local consents from various municipalities, pursuant to the provisions of section 66 and 67 of the Transportation Corporations Law of New York State.
*934 The plaintiffs* received an omnibus consent from the County Board of (Supervisors, pursuant to Resolution No. 67-1969, adopted March 3,1969, which became an ordinance on that date with the approval of the County Executive Eugene H. Nickerson ; which consent is effective until December 31, 1970.
Subsequent to the issuance of the aforesaid omnibus consent, one of the plaintiffs, Bee Line, Luc., filed a proposed tariff increase with the P. S. C., predicated on losses sustained during the operating period set forth in said proposal. This application by one of the plaintiffs was made without prior application to the County of Nassau Department of Franchises. The County of Nassau objects to this action, based on article IV of the omnibus consent, entitled ‘ ‘ Fares ’ ’, which reads in paragraph (1) as follows: “ All petitions for changes in tariff shall be submitted to the Department of Franchises for its consideration prior to filing with the Public ¡Service Commission. If the Department of Franchises approves the petition, it may thereupon be immediately filed with the Public Service 'Commission-. If the Department of Franchises disapproves of the petition, it may not be filed with the Public ¡Service Commission until sixty days after such disapproval. In the event the Department of Franchises fails to act on the petition within sixty days after its receipt, the petition may then be filed with the Public Service Commission. This provision shall not affect the filing of a petition with the Public Service Commission for changes in tariff where such petition is filed within thirty days following the execution of an employee contract and the increase requested is alleged to be necessary to provide funds for the implementation of that contract.”
Under the Public Service Law, the bus companies have a right to apply directly to the P. S. C., at any time, for a fare increase, by following the procedural requirements of the Public (Service Law and the rules and regulations of the P. S. C. There is no requirement in the Public Service Law whereby bus companies are required first to proceed by petition when they seek a fare increase. The company prepares a set of exhibits in support of the proposed tariff and then discusses them with the Tariff *935 Bureau of the P. S. C. When the Tariff Bureau of the P. S. iC. indicates it has no objection to the proposed tariff charge based on the information furnished by carrier, this is then an alert to the company that it may then file a new tariff.
The plaintiff Bee Line, Inc. refused to comply with article IV (1) of the omnibus consent, entitled il Fares ”, which provides for an application to the county for fare increase as a condition precedent to filing with the P. S. -C.
Plaintiffs commenced an action for a declaratory judgment, alleging that article IV, ‘1 Fares ’ ’, of the omnibus consent is an illegal attempt by the county to regulate fares, inasmuch as fare regulation is a matter entirely within the province of the P. S„ CL
Plaintiffs have asked the court to grant judgment declaring that:
(1) The P. S. G. of New York ¡State has exclusive jurisdiction and control over tariff and the fares which may be charged by plaintiffs.
(2) The Board of Supervisors has no legal authority to include in its omnibus consent, issued pursuant to Ordinance No. 67-1969, the provisions of article IV (supra).
(3) Article IV (1) infringes on the right of plaintiffs to pursue their rights under subdivisions 5 and 15 of section 61 of the Public Service Law (quoted hereinafter).
(4) The Oounty Executive has no power under the terms of Ordinance No. 67-1969 and the omnibus consent issued pursuant thereto, or under the law, to direct the Oounty Attorney, or to employ any attorney, to enforce against plaintiffs any claimed right arising out of article IV (1) of the omnibus consent.
The county argues that the condition set forth in article IV of the omnibus consent is a proper exercise of the legislative grant of power. The county relies upon the Public Service Law and the Gounty Charter in support of its position (Public Service Law, § 63-d, subd. 2; Nassau County Govt. Law, art. XIV).
The county in its answer, requested a judgment declaring that:
(l)1 The terms and conditions imposed in consents are within legal authority of Board of Supervisors.
(¡2)1 The terms and conditions included are valid and enforceable.
Two of the plaintiffs, Bee Line, Inc. and Hempstead Bus Corporation, and the defendants, moved against each other for an injunction during the pendency of the action and until final judgment. Plaintiffs, in their application, alleged they anticipated the county would commence an action to compel compliance, or cancel the omnibus consent, or make objection before *936 the P. S. C. The county sought a temporary injunction to restrain collection of any increased fare that the Public Service Commission might grant to plaintiffs prior to the conclusion of this litigation.
Both applications for a preliminary injunction were denied for the reasons set forth in the decision of Mr. Justice Wachtler, Special Term, Part I, dated June 25,1969'.
Defendants thereafter made a motion for summary judgment. In their moving papers, defendants say, in essence: the plaintiffs seek a declaratory judgment holding the Board of Supervisors to be without authority to enact and impose terms and conditions which regulate fares, and that the terms are unenforceable, null and void; that the plaintiffs set forth no issues of fact and that their complaint is without merit. The defendants point out that by the terms of article XIV (1) of the Nassau County Charter, the Board of Supervisors is expressly authorised to grant consents upon such terms and conditions as the board may prescribe. The terms, which have been included in article IV (supra), defendants state, are properly imposed, pursuant to statutory authority; and the conditions are reasonable regulations required to enable the county to determine, from an examination of the books and records of plaintiffs, whether, and in what way, the county might conduct opposition to any proposed tariff increase in an appearance before the Public Service Commission pursuant to section 109 of the Public (Service Law. These terms, they contend, are reasonable efforts by the county to assure that the interest of county residents will be protected —and are conditions clearly within the scope of the powers of the Board of (Supervisors.
The plaintiffs cross-moved for summary judgment and agree that there are no issues of fact to be tried and that the complaint, answer and counterclaim in reply raise only questions of law.
The court finds that there are no triable issues of fact raised by the pleadings. There is a single question of law to be determined: whether the Nassau County Board of Supervisors exceeded its authority when it included in the omnibus consent a requirement that all omnibus companies, filing a proposal for change in tariff with the P. S. C., first submit .such proposal to the Nassau County Department of Franchises for its prior consideration.
The court finds that the Board of Supervisors did in fact exceed its authority when it included a requirement, tantamount to “ fare control ” in the omnibus consent.
A long line of decisions, rendered by the courts of this State, support beyond question the premise that the State has reserved *937 to itself exclusive control over State transportation matters. The first Railroad Commissioners were given the limited power of ascertaining and reporting legal violations by railroad corporations (L. 1855, ch. 526). Rates were fixed by the Legislature itself. In 1905 the first delegation of rate-making authority was made to a commission. The constitutionality of such delegation was upheld by the Court of Appeals. (Village of Saratoga Springs v. Saratoga Gas, Elec. Light & Power Co., 191 N. Y. 123.) In furtherance of this control, on recommendation of then G-overnor Charles E. Hughes, the Legislature did, on July 1, 1907, legislate into being the first Public 'Service Commission with exclusive control over intrastate transportation matters, including the authority to regulate rates.
It is well settled that transportation matters are of State concern. The Nassau County 'Charter in its entirety is a state-enacted charter. The State Legislators did not include in the charter a delegation of rights to the county to control the fares to be charged by omnibus companies within its jurisdiction. Therefore, the county is prohibited from including such a regulation as a condition to granting an omnibus consent.
The State has retained the prerogative of controlling transportation, as provided for in section 61 of article 3-A of the Public (Service Law:
‘ ‘ The commission,
“1. (Shall have general supervision of all omnibus corporations, having authority to operate an omnibus line or omnibus lines under any general or special law or under any charter or franchise, and of all omnibus lines owned, leased or operated by any such omnibus corporation. * * *
“ 5. ¡Shall have power to examine all omnibus corporations and keep informed as to the methods, practices, regulations and property employed by them in the transaction of their business. Whenever the commission shall be of the opinion, after a hearing had upon its own motion or upon complaint, that the rates, fares or charges demanded, exacted, charged or collected by any omnibus corporation subject to its jurisdiction for the transportation of persons within the state, or that the regulations or practices of such omnibus corporation are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of any provision of law over which the commission has supervision, the commission shall determine and prescribe in the manner provided by and subject to the provisions of section sixty-three-b of this chapter, the just and reasonable rates, fares and charges thereafter to be in force for the service to be furnished, and the just and reasonable acts and regulations to, be *938 done and observed; and whenever the commission shall be of the opinion after a hearing had upon its own motion or upon complaint, that the property, equipment or appliances of any such corporation are unsafe, inefficient or inadequate, the commission shall determine and prescribe the safe, adequate and efficient property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public and in compliance with the provisions of law and of its franchises and charters. * # *
1 ‘ 15. The jurisdiction of the commission over the matters herein conferred on the commission shall be exclusive.” (Emphasis supplied.)
An omnibus corporation in New York 'State receives its authority to operate from the State.
Article 5 of the Transportation Corporations Law permits an omnibus corporation (such as plaintiffs) to be organized. Under section 65 of the Transportation Corporations Law, an omnibus corporation is a common carrier (as that term is used in the Public ¡Service Law) and is required to obtain a certificate of public convenience and necessity for the operation of its rqutes and is subject to all of the provisions of the Public Service Law applicable to common carriers.
Under section 66 of the Transportation Corporations Law, no omnibus corporation can operate an omnibus line without obtaining a certificate of public convenience and necessity.
Subdivision 5 of section 61 of the Public Service Law gives the P. S. C. power to fix just and reasonable rates of fares for bus lines, subject to the procedural requirements of section 63-'b of that law. Subdivision 15 of section 61 of the Public Service Law is explicit as to the exclusiveness of the commission over such matters. The fact of exclusive jurisdiction was recognized in Matter of City of Rochester v. Public Serv. Comm. (275 App. Div. 172, 175, affd. 301 N. Y. 601). There the court said: ‘1 Turning to the merits of the controversy, it cannot be denied that the police powers of the State are sufficiently ibroad to permit the regulation of the rates charged by public utilities generally, and by common carriers specifically. The point herein raised is whether the commission may act in derogation of the maximum fare clause contained in the 1890 franchise.”
The court, in upholding the power of the P. S. 0. to increase fares above the amount stated in such clause reiterated the exclusiveness of the commission as to rate matters stating (p. 176) as follows: “ 'Since respondent is now an omnibus corporation * * * it is subject to the jurisdiction of the Public Service Commission, including its plenary and exclusive *939 regulatory authority over rates of fare. (Public Service Law, § 61, subds. 5, 15.) ”
If the P. S. 'C.’s jurisdiction as to this matter were not exclusive, then, there would appear to be no need for the introduction of Assembly Bill A 2355, dated January 21, 1969, introduced at the last session of the New York State Legislature — proposed to amend section 5-d of the Public Service Law in relation to omnibus lines operating “ in counties ” having a population of more than one million and adjacent to a city having a population of more than one million, so as to give the 'County of Nassau control over rates of fares similar to that control which a city exercises qualified under and pursuant to that section. Section 5-d of the Public Service Law, added by chapter 163, of the Laws of 1960, amended by chapter 618 of the Laws of 1953, effective July 1, 1953, provides an exception to the P. S. O. jurisdiction over rates of fares, and reads as follows: “ Notwithstanding the provisions of this chapter, or any other provision of law, the commission shall have no jurisdiction with respect to rates of fare, transfers, zones, combined rides and the division of the receipts thereof, established pursuant to any contract, franchise, or consent heretofore or hereafter made between any omnibus corporation, street railroad corporation or any corporation or person operating a street surface transportation facility and any city having a population of more than one million inhabitants, or with respect to the service related to such rates of fare. As to such matters the governing body of any such city or any agency of such city to be designated by it shall have and exercise the powers and duties which, except for this section, would be had and exercised by the commission.” A municipal corporation is not sovereign, but is, so far as its purely municipal relations are concerned, simply an agency of the State for conducting the affairs of government, and as such it is subject to the control of the Legislature.
Article XIV of the Nassau County Charter is modeled, (and in fact in Nassau County is the local substitute for) after section 66 of the Transportation -Corporations Law. The phraseology found in article XIV is a duplication of the language in section 66 (art. 5) of the Transportation Corporations Law, which reads: “ No stage, omnibus line, stage route, motor vehicle line or route, nor any vehicle in connection therewith, and no vehicle carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of such city to operate over the streets thereof shall be operated wholly or partly upon or along *940 any street, avenue or public place in any city, nor shall a certificate of public convenience and necessity ibe issued therefor, until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of such city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe. Such terms and conditions may include provisions relating to description of route, rate of speed, compensation for wear and tear of pavement, improvements and bridges, and safeguarding passengers and persons using the streets. Operation upon the streets of any such city shall not be permitted until the owner or operator of such vehicles or proposed line or route, if required by such local authorities, shall have executed and delivered a bond to such city in an amount fixed by such local authorities and in form prescribed by the chief law officer of such city with sureties satisfactory to the chief fiscal officer of such city, which bond may be required to provide adequate security for the prompt payment of any sum accruing to such city, the performance of any other obligations, under the terms and conditions of such consent, as well as for the payment by such owner of any damages occurring to, or judgments recovered by, any person or account of the operation of such line, route or vehicles.”
The county cannot effectively govern at the county level, 'beyond the scope of the power which the ¡State has legislated to it.
Section 1 of article IX of the New York State Constitution provides:
‘ ‘ Effective local self-government and intergovernmental cooperation are purposes of the people of the state. In furtherance thereof, local governments shall have the following rights, powers, privileges and immunities in addition to those granted by other provisions of this constitution: * * *
“ (h) {I) ¡Counties, other than those wholly included within a city, shall be empowered by general law, or by special law enacted upon county request pursuant to section two of this article, to adopt, amend or repeal alternative forms of county government provided by the legislature or to prepare, adopt, amend or repeal alternative forms of their own.”
Nassau County possesses its County Government Law by reason of adoption of chapter 879 of the Laws of 1936 (as amd. by L. 1937, ch. 618) by the electorate of Nassau County in a referendum which became effective on January 1, 1938. Known as the Nassau County Charter, this law was adopted pursuant to the *941 provisions of section 26 of article III of the Constitution, now section 2 of article IX.
“ Legislative Intent. It is the intention of the legislature by this article to provide for the full and complete exercise by the board of .supervisors of powers of local legislation pursuant to the provisions of section twenty-six of article three of the constitution.” ■(§ 162, added by L. 1937, ch. 618.)
Subdivision 2 of section 151 of article 1-A of the County Government Law of Nassau 'County provides: “ Effect of local law on acts of legislature. * * * 2. No local law shall supersede any provision of an act of the legislature relating to counties which provision in terms and in effect applies alike to all counties.”
The first three sentences of subdivision 2 of section 1401 of article XIV of the County Government Law of Nassau County are identical in all major provisions with section 66 of the Transportation 'Corporations Law, the only differential being to apply the language of section 66 of the ‘Transportation Corporations Law to the County of Nassau. Nowhere does section 66 provide for a rate control as a condition.
The next two sentences preserve the home rule rights of cities and villages, which existed under section 67 (art. 5) of the Transportation Corporations Law, which reads: “The town board of any town or the board of trustees of any village may adopt a resolution providing that the provisions of the preceding section shall apply to such town or village, and thereafter no stages, omnibus or motor vehicle line or route shall be operated, wholly or partly, upon or along any street «or highway in such town or village, nor shall a certificate of public convenience and necessity be issued therefor, until the owner or owners thereof shall have procured the consent of the local authorities of such town or village, in the same manner and subject to the same terms and conditions as is provided in the preceding section for procuring the consent of the local authorities of a city; and for such purpose the town board of a town and the board of trustees of a village shall be deemed the local authorities.”
■The next-to-last sentence of subdivision 2 of section 1401 obviates the necessity for a consent from a city or village in Nassau County where the operation or proposed operation was over a State, county or town highway.
A careful reading of the amendment to section 1401 of article XIV, by chapter 755 of the Laws of 1950 makes it quite clear that the intention of this legislation was to eliminate the necessity of multiple consents from the several towns and various *942 villages for the operation of omnibus lines and to give the granting of such consent to the Board of Supervisors.
Although chapter 756 of the Laws of 1950 amended the Nassau County 'Charter, the Transportation -Corporations Law and the Public ¡Service Law relating to municipal consents, it did not amend the Public Service Law to give Nassau County any control over fares to be charged by omnibus corporations operated within the county. The local authorities are prohibited from imposing conditions to the consent which in any way assume to regulate the rate of fare for the reason that the right to regulate fares is essentially a legislative function. The general legislative power is absolute and unlimited except as restrained by the Constitution. (People ex rel. New York & North Shore Traction Co. v. Public Serv. Comm., 175 App. Div. 869.) The amendment to the Nassau County -Charter which provided for article XIV did not carry with it in explicit language jurisdiction over rate making. It is a fundamental concept of law that jurisdiction cannot be conferred by implication, but must be given by language which admits of no other reasonable construction. (Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175.)
The power of control over tariffs or fares has been exclusively delegated by the State to the P. S. C., prior to the enactment of the Nassau County Charter. Therefore, this abortive attempt by the county to impose a condition affecting tariff or rate control is patently illegal.
Prom the plenitude of decisions in which the principle of exclusive Public Service control has been sustained by the learned Justices of this State, it should have been apparent to the county authorities that this attempt to usurp the authority reserved to the P. S. C. by the State could not withstand the assault of judicial review — the saving provisions of subdivisions 1 and 2 of section 63-e of article 3-A of the Public Service Law (quoted below) notwithstanding:
“ 1. Notwithstanding any inconsistent general or special statute, the commission shall have power to issue a certificate of public convenience and necessity to any omnibus corporation proposing to operate through or into two or more cities, towns, and/or villages without the consent of local authorities of such towns or villages, if such consent is unreasonably refused or withheld, or if unjust or unreasonable conditions are attached to the granting of any such local consent, and may modify any such conditions or attach new conditions as it shall determine to be just and reasonable. Provided, however, that conditions lawfully attached by local authorities with respect to the rate of *943 speed, and the protection of the safety of its inhabitants shall not be deemed or be determined to be unjust or unreasonable.
‘ ‘ 2. The commission may also issue a certificate of public convenience and necessity without the consent of local authorities of cities and other municipalities otherwise required by law, if such local authorities do not either grant or refuse the consent within ninety days after the application is filed. ’ ’
It is axiomatic that municipal corporations and governmental agencies have only those powers which are conferred expressly or by necessary implication, that power is not to be inferred, and the principle of strict construction should be applied. (Civil Serv. Forum v. New York City Tr. Auth., 4 A D 2d 117, 123; Village of Fort Edward v. Fish, 156 N. Y. 363; City of New York v. Maltbie, 274 N. Y. 90, 98.)
As was said in City of Buffalo v. Stevenson (207 N. Y. 258, 261): “ What powers were not expressly conferred therein are, only, to be implied when, necessarily, incidental, or essential, to the exercise of those granted and to the due accomplishment of those objects of the municipal corporation, which are declared in its charter.”
The local approval requirement contained in subdivision 2 of section 63-d of the Public Service Law is a condition precedent to Public Service Law approval and is not intended to do more or less than give to the County of Nassau the same control provided for in sections 66 and 67 of the Transportation Corporations Law, which sections applied to cities, towns and villages in Nassau County prior to 1950.
The plaintiff, Bee Line, Inc., has resisted the enforcement of article IV and rightly so. The court is not here concerned with the attendant issues of “ reasonableness ”, “ convenience ”, etc. raised by the plaintiffs. The only question to be resolved at this time is legality of article TV of the omnibus consent.
The county concedes the P. S. C. has exclusive jurisdiction over the rates of fares when in affidavit of A. Thomas Levin, dated June 12, 1969, contained in cross motion, he affirms as a Deputy County Attorney fully familiar with the material facts: ‘1 These provisions were drafted in clear recognition of the fact that the application for an increase would, in any event, be made to the Public ¡Service 'Commission. The review of the application would, hopefully, reveal or disclose information to the Department of Franchises which would enable the County of Nassau to appear and present testimony before the Public Service Commission in an effort to achieve the most effective balance between the financial needs of the omnibus operators and the financial abilities of the riding public.”
*944 In effect, by the imposition of article IY in the omnibus consent, the county seeks an examination before trial of the omnibus company, notwithstanding the fact such action would, in the final analysis, by the county’s own admission, be determinative of nothing.
As eager as the county officials may be to protect the interest of the citizenry using public facilities, the State has wisely made ample provision for any municipality to appear before the P. S. 'C. and ¡be heard.
Section 109 of the Public Service Law provides: ‘ ‘ Appearances of municipal corporations. Each municipal corporation shall have the right to appear as a party before the commission or before any court in any action or proceeding involving rates, service or other matters affecting the municipal corporation or any of its residents. Any city, village, county or town may appropriate and expend such an amount as the governing body of such municipality may determine to be necessary for the purpose of paying the expenses of the employment of expert and technical advisors, engineers, accountants, appraisers, attorneys, and other persons in connection with any matter to be presented to the commission in any action or proceeding involving electric, gas and water rates, service or other matters to which it is a party.”
The court has reviewed the case law upon which the county predicates its defense and finds the decisions cited are first of all clearly distinguishable on the facts and do not involve the precise question of law now before the court.
As was pointed out in People ex rel. New York & North Shore Traction Co. v. Public Serv. Comm. (175 App. Div. 869, supra), the fact that the Legislature has provided for prior local approval in no way modifies the principle that the permission to be, and to function as, an omnibus corporation proceeds from the legislative authority of the 'State. Analogous to the instance of a trustee who is authorized to convey the corpus of a trust only with the consent of the beneficiary, the consent of the beneficiary is necessary, nevertheless the title acquired by the grantee is that of the trustee and not that of the beneficiary. So the consent of the county is but a step in the grant of a single, indivisible certificate of necessity to operate from the P. S. 0. The local authorities are prohibited from imposing conditions to a consent which assume to regulate the rate of fare, for the simple reason that fare regulation is essentially a legislative function, absolute and unlimited except as restrained by the Constitution.
*945 As was stated by the court in People ex rel. Bridge Operating Co. v. Public Serv. Comm. (153 App. Div. 129), the right to regulate fares to be charged by public service corporations is essentially a legislative function, and it may even be doubted whether, in this State the Legislature may deprive itself of, or delegate to any other body or officer, municipal or otherwise, the power to bind it for a definite term not to exercise the inherent power to regulate such rates.
Again, in Richmond Co. Gas-Light Co. v. Town of Middletown (59 N. Y. 228, 232) the learned court held that a municipal corporation is created by law, for certain local governmental purposes, and is authorized to exercise such powers only as were conferred upon it by law. The act conferring power on Nassau 'County to grant an omnibus consent contains no specification of the authority to regulate, consider, approve, or disapprove rates as a condition to its consent.
So far as the consent of the county is limited by conditions which are in conflict with the provisions of the Public Service Law, it is enough to ¡say that the statute must prevail and such conditions are simply nugatory. (People ex rel. South Shore Traction Co. v. Willcox, 196 N. Y. 212, 217.)
As was so ably stated by Crane, J., in People ex rel. Village of South Glens Falls v. Public Serv. Comm. (225 N. Y. 216, 223), a municipal corporation is simply a political subdivision of the State and exists by virtue of legislative enactments. Bate regulation is a matter of the police power of the State. The Legislature, having power to regulate charges, has conferred this power upon the P. S. C. (Public Service Law, § 66, subd. 5).
Again, as was stated by McLaughlin, J., in a concurring opinion in the same case (p. 225): il The right to regulate rates of public service corporations is a governmental power vested in the state in its sovereign capacity. It may be exercised by the state, or through a commission appointed by it; or it may delegate such power to a municipality. The delegation of this power, however, is never implied since the effect is to extinguish, no matter for how short a time, pro tanto a power of the state. Therefore, when delegated its existence and the authority to make it must clearly and unmistakably appear. (Matter of Quinby v. Public Service Commission, 223 N. Y. 244.) Every doulbt must be resolved in favor of the continuance of the power in the state (Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265; Wyandotte County Gas Co. v. Kansas, 231 U. S. 622.) ”
And, again, in City of New York v. Maltbie (274 N. Y. 90, 98, supra) the court, Judge Hubbs, in a matter relating to fixing *946 water rates, stated: “ Jurisdiction of the Public Service Commission cannot be conferred by implication, but must be given by language which admits of no other reasonable construction, (Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175.)” And (p. 99): “ We believe that the conclusion which we have reached is in accord with the public policy of the ¡State to vest the fixing, of rates to be charged by public utility corporations in the Public Service ¡Commission.”
This court concludes its decision with the words of Judge Cardozo, one of New York’s most able Justices, contained in a decision involving rate fixing (People ex rel. City of New York v. Nixon, 229 N. Y. 356, 360): “ On the other hand, we expressly conceded, as we had often before held, that there was plenary power in the legislature to determine the conditions that might be attached by municipalities to consents to be given in the future ”. And, again (p. 361): “ The statute which clothed the commission with jurisdiction to increase charges if found to be inadequate, was notice to municipalities that franchises thereafter granted must be coupled with no conditions inconsistent with the jurisdiction thus conferred.” (Emphasis supplied.)
For all the foregoing reasons, the defendants’ motion for summary judgment is denied, and the plaintiffs’ cross motion for summary judgment is granted to the extent that the court finds the incorporation of article IV (1) “Fares” in the omnibus consept, insofar as it seeks to regulate fares, to be beyond the scope of authority vested in the county by the State, and, therefore, illegal, invalid and unconstitutional. The court makes no determination with respect to the requirements contained in article IV, “ Fares ”, subdivisions (2) and (3), in that the complaint herein is specifically directed to fare regulation, notwithstanding the reference made in the pleading to article IV in toto. The court finds subdivisions (2) and (3) to be conditions which stand independent of subdivision (1).

Note: The plaintiffs in this action are: Bee 'Line, Inc., Rockville Centre Bus Corp., ¡Stage Coach Lines, Inc., Hempstead Bus Corporation and Semke Bus Company, Inc. Although the latter two named corporations, Hempstead Bus Corporation and (Semke Bus -Company, Inc., have keen set forth as parties plaintiff, the omnibus consent referred to hereinabove, does not include said two corporations. On the other hand; the omnibus consent does include the names of the Roosevelt Bus Line and the -Utility Lines, Iric., as well as all the other above-named plaintiffs; however, the Roosevelt Bus Line and the Utility Lines. Inc. have not been named as parties plaintiff in this action.