Bertram Harnett, J.
Bus transportation in Nassau County traditionally has been performed by a series of unrelated private companies. But, over the past decade, the service quality, profitability, and intercompany co-ordination of multiple bus routes deteriorated, and became subject to increasing public challenge.
As a remedial step in 1967, under then newly enacted State legislation, the county took over a number of the private bus concerns and leased their facilities to the Metropolitan Suburban Bus Authority (MSBA), an organizational child of the Metropolitan Transportation Authority (MTA). MSBA then operated the busses principally over street “ line ” routes between the numerous population centers in the county.
Now, MSBA, with county approval, is undertaking two additional aspects of bus service: school bus and charter transportation. Five bus. companies operating in Nassau County and the New York State School Bus Operators Association have taken up litigative arms to stop this. But, the court finds the extension of bus service to schools and charters is permissible and survives their challenge.
I. FRAMEWORK OF THE CASE
This controversy is formed by three converging motions for summary judgment by the bus companies, the county, and the MSBA.
A. NASSAU COUNTY LOCAL LAW AND THE MSBA CONTRACT
The county and MSBA entered the Nassau bus field through a series of enabling statutes and then an agreement between them.
In 1972, Local Law No. 14 of the County of Nassau was adopted by the County Board of Supervisors, providing in broad opening terms: “ Section 1. The county of Nassau is hereby authorized to acquire, own and operate public transportation facilities of any nature within its boundaries ”. In the remaining three substantive sections of Local Law No. 14 of 1972 of the County of Nassau, the county was granted the power to acquire and contract for the operation of such ‘ ‘ public transportation facilities ”. On July 25,1973 Nassau County acquired by condemnation the busses, equipment, routes, and facilities of 11 private bus companies in Nassau County.
Previously, on January 15,1973 the county agreed that MSBA should lease and operate the busses and facilities it acquired by condemnation. The county-MSBA agreement in section 2 provided that MSBA should: ‘ ‘ use the leased assets for the provision of omnibus service * * * within the County of Nassau, or from points within the said county to other points within the Metropolitan Commuter Transportation District ’ \
*354 It was agreed MSBA would keep the operating revenues and pay the expenses of “ providing the omnibus service ” required ‘ ‘ with such financial assistance as may be provided by the county and others Nassau County made an initial “ financial contribution ’ ’ of $500,000 to get the MSBA started, with provisions for MSBA to require the county authorize more.
Concededly, some county-MSBA activity has begun in both school and charter bus service in addition to the regularly scheduled street route transportation.
B. THE CONTENTIONS
1. BY THE PRIVATE BUS OPERATORS
Plaintiffs, who are essentially private bus operators, argue along three general propositions.
a. TJnconstitutionality of the local law generally, in that it allows municipal operation of ‘ ‘ public transportation ’ ’ beyond New York’s statutory and constitutional grants of power to localities to operate ‘ ‘ mass transportation ’ ’.
b. Offensiveness of school and charter bus activities, in that they violate the Constitution, State statutes, Local Law No. 14 of 1972 of the County of Nassau and the actual MSBA agreement.
c. Waste of public moneys, in the county’s financial assistance to MSBA.
2. BY THE DEFENDING PUBLIC BODIES
The county and MSBA also center their arguments in three lines.
a. Denial of exceeding any statutory or constitutional authority. .
b. Necessary parties missing, in that the other private bus companies of the county are not suing or being sued.
c. No legally protected interest shown by the bus operators.
II. PROCEDURAL POINTS
We reject any contentions that the bus operators and their association have insufficient interest and that the case is fatally defective because all the Nassau County private bus operators were not joined in the suit.
A. SUBSTANTIAL INTEREST
The court rules that the private bus operators here do have the standing to challenge the validity of government competition which affects their businesses. A genuine pecuniary and *355 operational interest is at stake. (Daum v. Meade, 35 A D 2d 598; Matter of Bauman v. Fusco, 21 A D 2d 470, 472.) The issues are important to the public and are being raised by parties who may be adversely affected by their resolution. (See Berkey v. Downing, 68 Misc 2d 595, 598, affd. 39 A D 2d 1008.)
The tests of “ suable interest ” in modern society cannot rest with archaic rules of property law. If law is to fulfill its role in relieving social tension, there must be recognition of reasonable relationship to a happening. (Slevin v. Long Island Jewish Med. Center, 66 Misc 2d 312, 314.)
Where parties are directly affected by specific public conduct, the courts may allow suit. (See Scarsdale Supply Co. v. Village of Scarsdale, 8 N Y 2d 325, 328.) The court is satisfied that in economic terms the bus operators are substantially affected by the involvement here. They are not remote to the claimed harm. Considering the facts of business competition, they are reasonably related to the complained conduct.
The State Bus Operators Association is a trade association with some 20 or more members resident in Nassau County. As a “bona fide recognized organization representing [a] class with a specific interest in the litigation in question ’ ’, the association is more than a “concerned bystander ” and “ has the requisite standing to bring this action ’ (Matter of National Organization for Women v. State Division of Human Rights, 34 N Y 2d 416, 419, 420; Halpern v. Lomenzo, 35 A D 2d 41, 43.)
B. PARTIES SUFFICIENT HERE
The absence of other private companies in the county presents no bar to declaring the rights of parties here. ‘ ‘ Complete relief [may be] accorded between the persons who are parties to the action.” (CPLR 1001, subd. [a].) Moreover, while an adverse decision here might have precedential impact (cf. CPLR 1001, subd. [b]) the missing bus operators would not be “ inequitably affected ” here since they would not be barred from bringing their own suits by any adjudication in this matter. (See Newburger v. Newburger, 5 N Y 2d 953.)
III. STATUTORY ELEMENTS
A series of constitutional and statutory provisions form the legal backdrop.
A. GENERAL AUTHORITY FOR “ TRANSIT FACILITIES ” ACQUISITION BY LOCALITIES
In New York State, the Constitution allocates power between the State and localities. Local governments are created by the *356 State Legislature under subdivision (a) of section 2 of article IX of the New York State Constitution. They have only those powers specifically delegated to them by the State. (Seaman v. Fedour ch, 16 N Y 2d 94,101.)
Section 2 (subd. [c], par. [7]) of article IX of the New York Constitution permits a local government to enact laws permitting: “ The acquisition of its transit facilities and the ownership and operation thereof ”.
The Municipal Home Buie Law (§ 10, subd. 1, par. [ii], cl. a, subcl. [7]) repeats this very provision in enumerating the activities counties may undertake, although neither the statute nor Constitution defines “ transit facilities ”.
B. “ MASS TRANSPORTATION”-AUTHORITY OP LOCALITIES
Article 5-1 of the General Municipal Law, entitled 1‘ Mass Transportation and Airport and Aviation Facilities ”, was enacted in 1967. (See L. 1967, ch. 717.) It prescribes the terms of local involvement in “ mass transportation ”.
Subdivision 1 of section 119-r of the General Municipal Law provides in pertinent part: “ To assure the provision of mass transportation services to the public at adequate levels and at reasonable cost, every city, town, village or county not wholly contained within a city, shall have power to adopt local laws to authorize: (a) The acquisition * * * equipment, maintenance or operation of one or more mass transportation projects * * *. (b) The making of a contract * * * for the acquisition by purchase of * * * an existing mass transportation facility actually used and useful for the convenience of the public. * * * (d) The making of a contract * * * for mass transportation services to be rendered to the public by a privately-owned or operated mass transportation facility ”.
C. LEGALITY OF MSBA OPERATION OF BUS SERVICE
MSB A was organized as a “ public benefit corporation ’ ’ subsidiary to MTA, pursuant to subdivision 5 of section 1266 of the Public Authorities Law. This statute enables MTA to undertake its authorized functions by “ one or more wholly owned subsidiary corporations * * * subject to the restrictions and limitations to which [MTA] may be subject ”, MTA and its prescribed standards of operation have been upheld constitutionally. (Metropolitan Transp. Auth. v. County of Nassau, 35 AD 2d 739, affd. 28 N Y 2d 385.)
Subdivisions 1 and 2 of section 1266 of the Public Authorities Law set forth the general grant of power to MTA so that *357 MSBA may acquire by lease and operate: ‘ ‘ any transportation facility, wholly or partially within the metropolitan commuter transportation district
IV. ESSENTIAL VALIDITY OP LOCAL LAW NO.14 AND MSBA AGREEMENT
Local Law No. 14 of 1972 of the County of Nassau must be tested on its face against the constitutional and statutory grant of power to localities to acquire and operate ‘ ‘ transit facilities ’ ’ and “ mass transportation projects ”.
With respect to regularly scheduled bus street routes, the county-MSBA scheme easily withstands general attack. There is no real dispute as to this point. Indeed, one might assume from public information that the outgoing private bus operators greeted public acquisition of their burden with some .sighs of relief.
Street route busses are “ public transportation facilities ”, as set forth in Local Law No. 14, and are both “transit” and “ mass transportation ” facilities within subdivision (a) of section 2 of article IX of the New York Constitution and .subdivision 1 of section 119-r of the General Municipal Law. In view of the manifest public purposes of the bus appropriation here, and the presumption of constitutionality which adheres in absence of some showing to the contrary (Smidt v. McKee, 262 N. Y. 373; Seagram & Sons v. Hostetter, 45 Misc 2d 956, affd. 23 A D 2d 933, affd. 16 N Y 2d 47, affd. 384 U. S. 35) the court rules Local Law No. 14, 1972 of the County of Nassau is not unconstitutional in any general or basic aspect. (See Matter of Smith v. Great Amer. Ins. Co., 29 N Y 2d 116, 119; Williams v. Williams, 23 N Y 2d 592.)
The implementation of Local Law No. 14 through the MSBA agreement for “ omnibus service ” on its face seems reasonable and within the county’s statutory authority. The municipal purchase and operation of bus lines is allowable. (See Andrello v. Dulan, 49 Misc 2d 17; Bee Line v. Nickerson, 60 Misc 2d 931, affd. 33 A D 2d 1106; 68 Opns. St. Comp., 1968, 914.) No meaningful challenge has been made to the appropriateness of the contract terms.
Where such bus service, charter or school, extends beyond Nassau County, it must be within the “ metropolitan commuter district”. No showing has been made by plaintiffs that these district boundaries were to be exceeded by virtue of the agreement and the court will not so construe it.
*358 V. LEGALITY OF SCHOOL OR CHARTER BUS SERVICE
Here is the nub of the case — the extension of service to school bussing and charter service.
On the one hand, the operators argue that school or charter activity is not “ mass ” transit, is not authorized by any legislation or agreement, and is offensive public competition with private operators in a profitable end of the bussing business. On the other, the public bodies argue, that school and charter service is permissible, and that use of street route busses for such activity is a reasonable ancillary use of .street equipment necessary to conduct a total bussing enterprise on sensible economic terms.
We find for the county and MSB A and against the private operators on this pivotal issue.
A. SCHOOL AND CHARTER SERVICE IS ‘ ‘ MASS ’ ’ TRANSPORTATION
There is no real .statutory definition of ‘ ‘ mass ’ ’ transportation. The definition of “ mass transportation capital project ” contained in subdivision b of section 119-q of the General Municipal Law gives scant guidance. It merely includes any “ omnibus ” facility without refinement as to different types of omnibus service. Still, we must note that the absence of any qualifying or limiting terms in the statute, as to both “ omnibus ” facility and ‘1 mass transportation. ’ ’, carries the implication that no limitations were intended in the bread general words used. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 94.) Had the Legislature meant to exclude from local control any segments of mass or omnibus transportation, it could have done so.
There is, to be sure, a sense in the repeated use of the word “ mass ” that the facilities operated by localities must be available for use by combined numbers of people. (1969, Opns. Atty. Gen. 21.) Yet, having said this, we can find nothing more specific in the statutes bearing on the issue of whether school or charter bus service is included within a locality’s authority to engage in ‘ ‘ mass ’ ’ transportation.
We must, therefore, assess the terms “ transit” and “mass transportation ’ ’ from their usage, and apply common sense in weighing the public policy ramifications of permitting local governments leeway in this field. (Essenfeld Bros. v. Hostetter, 14 N Y 2d 47, 52; see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 96.) The law is neither made nor perceived in a vacuum apart from the function it serves. It exists in a social context. It is determined by its prescribed purposes and, where ambiguities arise, by reason galvanized to the task. Having *359 determined the governing principle that localities are empowered to operate mass transit, we, in the words of Oardozo, 11 must then determine the path or direction along which the principle is to move and develop, if it is not to wither and die (B. Oardozo, The Nature of the Judicial Process 28 [1921].)
“ Mass ” in this context must mean “ collective ” or “ aggregate ”, connoting groups of people being transported. Nothing in the common usage of these terms excludes carrying children to school or charter groups made up of members of the public. Both activities entail moving combined numbers, or masses, of people. Indeed, from the projections of greater bus occupancy and net profitability in this activity a more “massive ” transportation is involved than in the now accepted county operation street routes.
Moreover, there can be little doubt that the ‘ ‘ convenience of the public ” (General Municipal Law, :§ 119-r, subd. 1, par. b) is served by the contemplated school and charter service.
The operators claim school and charter bus service performed by MSBA is not ‘ ‘ commuter transportation and other services related thereto ”, as specified in section 1264 of the Public Authorities Law (cf. Public Authorities Law, § 1261, subd. 9; Transportation Law, § 142, subd. 17, par. [1]; § 2, subd. 22). But, the court views commutation more comprehensively generally than movement only between home and job. It may be movement between home and school. Children “ commute ” to school everyday in the sense of going back and forth by public conveyance. Besides, any customary transportation need in a community, including school bussing or charter service, which may be reasonably discharged by commuter busses, forms a service related to commuter transportation. Under subdivision 1 of section 1264 of the Public Authorities Law, MSBA may deal not only with commuter transportation, but also with “ other services related thereto ”. In short, school bussing is a form of commuter service, and in any event the school bus and charter service is reasonably related to the street route service which is plainly “ commuter ”.
B. COUNTY AND MSBA NOT AUTOMATICALLY BARBED FROM ANCILLARY PROFITABLE ASPECTS OF BUSSING
There is no evidence that the Legislature meant to authorize public takeover only of unprofitable mass transportation as the operators suggest. Indeed, the Governor’s message accompanying the legislátion being signed into law was open ended, and without such a profitability delineation: “ [T]he bill * * * *360 clarifies and strengthens the powers of local governments to aid mass transportation”. (McKinney’s 1967 Session Laws of New York, Vol. 1, p. 1542.)
The essential point, which the operators do not want to see, is that using equipment for school and charter service is ancillary to regular operation of a street route bus company. It is what they do when they operate the street routes. This ancillary use of personnel and equipment for school and charter service is supportive of the street line service. It is rather cynical to expect only the publicly operated facilities to forego the advantage of related uses of its facilities. Certainly, no private boon to the operators was anticipated when the street routes were put into public operation.
Once there is a wholesale condemnation of busses, as here, there is every reason to maximize their usefulness in service and cost efficiency to the public. There remains a dominant public purpose in providing school bus and charter transportation through existing facilities. It is part of the mass transportation business operated for the county by MSBA.
The fear of private companies that they cannot compete with a carrier aided by public subsidy may be real. Perhaps in an ideal, purely competitive world, the notion of barring governmental intrusion into the market place could be persuasive. But, there has been an acknowledged breakdown of bus transportation service in Nassau County where the traditional market mechanism did not operate to serve the public. No longer is the field purely private. It has developed a public component in the public interest with private carriers operating alongside the county-owned facilities. • This creates no license for private operators to corner the market on all bus service that operates in the black, while the county and taxpayers are left to absorb the red without any opportunity to lighten the burden by engaging in the ancillary profitable aspects óf their own business.
Accordingly, the court sees no reason in the statutes or in public policy to exclude the county from school and charter bus service. Local Law No. 14, 1972 of the County of Nassau is a valid exercise of municipal authority and its application to school and charter bus service is warranted.
0. WASTE 0E PUBLIC FUNDS
In view of the public purposes implicit in mass transportation activity, and the inclusion in that field of school and charter bus service, the county subsidies to MSBA are not a waste of funds. A municipality may be enjoined from using public funds for an *361 illegal purpose (Gaynor v. Rockefeller, 15 N Y 2d 120; Stahl Soap Corp. v. City of New York, 5 N Y 2d 200). No such illegal use or purpose has been demonstrated here. Indeed, the undertaking of school and charter .services promises to lighten the public burden of mass transportation in accordance with a sensible and ordinary extension of an accepted business activity.
VI. CONCLUSIONS
The vehicles condemned by the county and leased to the MSBA for a school and charter bus service, as well as the accepted line activity, come within the definition of “omnibus facilities”. MSBA’s contract with the county for furnishing mass transportation services, and its engaging in school and charter bus activities, is lawful. Neither public body violated its authority under the law or the contract itself.
Plaintiffs’ motion for summary judgment is denied. Defendants’ motions for summary judgment are granted. The complaint is dismissed.