■ NEW YORK STATE SCHOOL BUS OPERATORS ASSOCIATION et al., Appellants, v COUNTY OF NASSAU et al., Respondents.—In an action, *inter alia,* for a declaration of the unconstitutionality and illegality of the operation of charter bus and school bus transportation by defendants and for related injunctive relief, plaintiffs appeal from an order-judgment of the Supreme Court, Nassau County, entered August 2, 1974, which, *inter alia,* (1) denied plaintiffs' motion for summary judgment, (2) granted defendants' cross motions for summary judgment and (3) dismissed the complaint. Order-judgment modified, on the law, by adding thereto a provision declaring the operation of charter bus and school bus transportation by defendants to be constitutional and legal. As so modified, order-judgment affirmed, without costs. As the complaint, in part, sought a declaratory judgment, a declaration should have been made with respect to the rights of the parties (see *Lanza v Wagner,* 11 NY2d 317, 334; *Einbinder v Ancowitz,* 38 AD2d 721).

We agree with the findings and conclusions reached by Special Term. Martuscello, Acting P. J., Latham, Cohalan and Brennan, JJ., concur; Munder, J., dissents and votes to reverse the order appealed from and to grant the declaratory and injunctive relief sought by plaintiffs, with the following memorandum: Plaintiffs seek to stop defendants from operating charter and school bus transportation in Nassau County. They claim that such operation is illegal. I agree. Defendants urge that their takeover and operation of charter and school buses is within the broad authority given to them by the State Constitution and the Legislature and that such operation is incidental to and necessary for the efficient operation of the mass transit facilities which they already operate. Special Term agreed with defendants, and in doing so noted, in part, as follows: "We must, therefore, assess the terms 'transit' and 'mass transportation' from their usage, and apply common sense in weighing the public policy ramifications of permitting local governments leeway in this field * * *. The law is neither made nor perceived in a vacuum apart from the function it serves. It exists in a social context." I might add that the law also exists in an historical context, and when we examine this area of the law in that context, we see clearly that by "usage" and "public policy" the Legislature and the courts have always considered charter and school buses as creatures quite different from general public mass transportation. Given this consideration, it seems to me that something more specific than the broad, general language relied upon by defendants must be shown to authorize their usurpation. Defendants essentially rely on the following statutory sources to support their position. The first is article IX (§ 2, subd [c]) of the New York State Constitution, which provides, in pertinent part: "In addition to powers granted in the statute of local governments or in any other law, (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government and, (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: * * * (7) The acquisition of its transit facilities and the ownership and operation thereof." Defendants further rely on subdivision 1 of section 119-r of the General Municipal Law, which provides, in part: "To assure the provision of mass transportation services to the public at adequate levels and at reasonable cost, every city, town, village or county not wholly contained within a city, shall have power to adopt local laws to authorize: * * * b. The making of a contract or contracts for the acquisition by purchase of all or any part of the property, plant and equipment of an existing mass transportation facility actually used and useful for the convenience of the public." Defendants also point to Local Law No. 14 (Local Laws, 1972, No. 14 of County of Nassau) adopted by the Nassau County Board of Supervisors, which provides, as here pertinent: "Section 1. The county of Nassau is hereby authorized to acquire, own and operate public transportation facilities of any nature within its boundaries." The question is what did the drafters of the above-mentioned State and local laws mean when they used the terms "transit facilities", "mass transportation facility" and "public transportation facilities"? Section 2 of article 9 of the State Constitution was adopted on November 5, 1963 and became effective on January 1, 1964. It generally recognized and granted home rule powers to

local governments. The latter were given the power to adopt and amend local laws "not inconsistent with the provisions of this constitution or any general law" (§ 2, subd [c], par [i]). In 1964, and for many years prior thereto, the general laws regarding transportation were found in the Public Service Law. Section 160 of that law (see L 1955, ch 633, § 3) contained New York's policy toward transportation: "It is hereby declared to be the policy of this state to regulate transportation by *contract carriers of passengers by motor vehicle* in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers *and omnibus lines* in the public interest; promote safe, adequate, economical and efficient service by such carriers of passengers by motor vehicle, and reasonable charges therefor *without unfair or destructive competitive practices*" (emphasis supplied). This stated policy regarding transportation speaks of (1) contract carriers of passengers by motor vehicles and (2) omnibus lines. These terms were defined in section 2 of the Public Service Law and their definitions made it explicitly clear that they did *not* include vehicles used solely for the transportation of children to and from schools, i.e., school buses; nor did they include vehicles used solely for the transportation of a group for a common purpose under special contract or agreement, i.e., charter buses (Public Service Law, § 2, subds 28, 32). Defendants correctly point out that all authority and responsibility regarding school bus operations have been transferred from the Education Department to the Transportation Department (L 1974, ch 970). In addition, subdivisions 28 and 32 of section 2 of the Public Service Law were transferred to section 2 of the Transportation Law in 1970 (L 1970, ch 267, § 2, eff Mar. 1, 1971), but these transfers reinforce my view. Despite the opportunity to remove or blur any distinction between school-charter bus transportation and other forms of transportation, the Legislature has maintained its consistent, historical position. Section 200 of the Transportation Law, which became effective March 1, 1971, declares the policy of the State regarding transportation in *precisely the same language* used in 1955 in section 160 of the Public Service Law, i.e., the State's concern is with "contract carriers of passengers by motor vehicle" and "bus lines" (the latter phrase is used instead of "omnibus lines", but obviously no change in meaning was intended). The definitions of these terms are now found in section 2 of the Transportation Law and, again, these definitions clearly state that they do *not* include school buses or charter buses (Transportation Law, § 2, subds 12, 22). Looking elsewhere, we see that subdivision 14 of section 1261 of the Public Authorities Law defines a transportation facility as "any * * * omnibus * * * facility * * * used for service in the transportation of passengers * * * as a common carrier for hire". The words "omnibus" and "common carrier for hire", based upon what we have seen from the Public Service Law and Transportation Law, do not include charter and school buses. In 1967, in approving the extensive legislation which created the Metropolitan Transportation Authority and strengthened the powers of local governments to aid mass transportation, Governor Rockefeller noted that the legislation was directed at such mass transportation projects as "commuter railway, rapid transit, *bus line,* waterway and airport improvements and developments" (emphasis supplied; see NY Legis. Ann., 1967, p 288 [Governor's memorandum on approving L 1967, ch 715]). He said nothing about charter and school buses. What all this background recognizes is that charter and school buses are really not what we refer to as public mass transportation. To conclude, as Special Term did, that school children are commuters, is stretching the point. There is something essen-

tially "private" about charter and school buses. They are a type of specialized service, much like taxicabs and airport limousines. They do not stop for everyone, only by appointment, as it were (see *Matter of Recreation Lines v Public Service Comm. of State of NY,* 7 AD2d 20, mot for lv to app den 7 AD2d 952). To allow defendants to take over and operate charter and school buses on the ground that these services are "related" or "incidental" to commuter service would, similarly, require or permit defendants to take over and operate everything from taxis to airlines. I do not think the Legislature ever intended that local governments might go so far. [79 Misc 2d 352.]