RUTH GOLDEN et al., Appellants, *v.* PLANNING BOARD OF THE TOWN OF RAMAPO, Respondent.

Second Department, July 23, 1971.

*David Coral* and *Reuben Ortenberg* for appellants.

*Max Mason* (*Robert H. Freilich* of counsel), for respondent.

MARTUSCELLO, J. This appeal raises the question of the constitutional validity of an amendment to the Zoning Ordinance of the Town of Ramapo. Specifically, the petitioners challenge the validity of section 46–13.1 of the ordinance on the ground that the Town Board by its adoption of the section exceeded the powers delegated to it by New York's enabling legislation.

On October 7, 1969 the petitioners, Ruth Golden, the record owner of a parcel of undeveloped land known as "Golden Estates", and Ramapo Improvement Corp., a contract vendee, submitted a preliminary subdivision plat to the town's Planning Board for approval. The subject parcel was zoned "RR-50" (rural residential with a 50,000-square-foot lot requirement) and consisted of just over 53 acres, which was sought to be subdivided into 41 lots. On October 13, 1969, the Town Board amended the town's Zoning Ordinance *inter alia* by adding section 46–13.1. This section requires a "residential developer" or his agent to obtain a special permit from the Town Board prior to the issuance of any subdivision approval for "residential development use" by the Planning Board. The amendment also added to section 46.3 the following definitions: A residential developer was defined *inter alia* as follows: "Any person (a) who, having an interest in land, causes it directly or indirectly to be used for residential development, or (b) who, directly or indirectly sells, leases or develops or offers to sell, lease or develop, or advertises for sale, lease or development any lot, plot, parcel, site, unit or interest for a residential development use * * * shall be deemed to be engaged in development use, residential." A "development use, residential" was defined as "the erection or construction of dwellings on any vacant plots, lots or parcels of land".

The challenged amendment sets forth explicit standards for the issuance of a special permit. The standards are based upon the availability to the proposed subdivision plat of five essential facilities or services, namely, (1) public sanitary sewers or an approved substitute; (2) drainage facilities; (3) improved public parks or recreation facilities, including public school sites; (4) accessibility to State, county or town roads; and (5) firehouses. It provides that no special permit shall be issued unless the proposed residential development has 15 development points computed on a sliding scale of value points. Success in obtaining the special permit is thereby closely tied in, via the point system, to the proximity of the proposed plat

to the immediate availability of the above-mentioned municipal facilities or services. The avowed intent of section 46–13.1 is to carefully phase residential development with the town's ability to provide such facilities or services.

The development point system is related to the town's duly adopted capital budget and capital improvement plans, under which the town committed itself to a program of continuing capital improvements designed to insure the complete availability of public facilities and services. According to these plans all the land in the town would be available for development within 18 years. Of course many plats would be available earlier, as soon as the specified municipal facilities and services become so situated with respect to a plat that 15 development points are achieved.

Apparently with the view of forestalling a challenge to the ordinance as amended, the ordinance contains certain remedial provisions designed to relieve a residential subdivision owner of possible unreasonable restrictions on the use of his property resulting from a strict application of the development point system. For example, the challenged amendment provides for the issuance of an approval of an application for a special permit vesting a present right with a residential developer to proceed with the residential development use of his land in such year as the proposed development will meet the required points, as indicated in the scheduled completion dates of the capital budget and capital plan, but not later than the final year of the 18-year capital plan. Furthermore, a plat owner is credited with the appropriate development points for those improvements scheduled to be completed under the capital plan even if the Town Board fails to appropriate the necessary funds for completing such improvements or if, for any other reason, such improvements are not completed. In addition to the foregoing, a residential developer is entitled, under the ordinance, to apply for a reduction in assessed valuation resulting from the temporary restriction placed on the land.

On December 9, 1969, the Planning Board denied the petitioner's plat approval "on the basis of the Community Design Review Committee Report and the opinion of [Town] counsel" that section 46–13.1 prohibits the Planning Board from approving the subdivision of a "residential developer" unless there has been first secured from the Town Board a special permit pursuant to the amended provisions of the Zoning Ordinance.

The threshold question which confronts us before we can consider the constitutionality of section 46–13.1 of the town's Zoning Ordinance concerns itself with the procedural frame-

work in which this case comes to us. Specifically, a proceeding under article 78 of the CPLR is not the proper vehicle to test the constitutionality of legislative enactments (*Matter of Overhill Bldg. Co.* v. *Delany*, 28 N Y 2d 449; *Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, 24 N Y 2d 400). However, since the Town Board has consented to appear in this action and subject itself to this court's jurisdiction, in order that the merits can be reached, we have, pursuant to subdivision (c) of CPLR 103, treated the instant proceeding as an action for a declaratory judgment seeking to test the constitutionality of the afore-mentioned section of the town's Zoning Ordinance and accordingly turn to a consideration of that question.

The respondent seeks to uphold the constitutionality of the challenged amendment and argues that the Town Board is merely exercising its power under sections 261 and 263 of the Town Law to zone.

Section 261 provides in part: "For the purpose of promoting the health, safety, morals, or the general welfare of the community, the town board is hereby empowered by ordinance to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the *density of population*, and the location and use of buildings, structures and land for trade, industry, residence or other purposes" (emphasis supplied).

Section 263 provides: "Such [zoning] regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets, to secure safety from fire, flood, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to *prevent the overcrowding of land*; to avoid *undue concentration of population;* to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and *encouraging the most appropriate use* of land throughout such municipality" (emphasis supplied).

The respondent urges that, in enacting the challenged amendment pursuant to the afore-mentioned delegated powers, the Town Board has placed time controls on land use, thus phasing population growth with the ability of the town to provide for essential municipal facilities and services. It should be noted

at this point that at the same time the Town Board enacted section 46–13.1 it also amended other sections of the Zoning Ordinance. In particular, there were deleted from the rural residential zone those residential uses which theretofore had been permitted as a matter of right; and such uses were thereafter categorized in section 46–9A as "Uses by Special Permit of the Town Board" (subject to § 46–13.1). As a result of these changes there remained no residential uses available as a matter of right to anyone who fell under the broad definition of residential developer — notwithstanding the fact that his property was in a residential zone.

In my opinion the time controls on land use imposed by section 46–13.1 were not legislatively authorized.

At the outset it can be noted that it is common knowledge that the extraordinary growth in suburban population in recent years has given rise to complex physical, social and fiscal problems and that communities have been hardpressed to solve these problems. Indeed, in an attempt to slow down community development on the urban fringe, municipalities have resorted to various zoning techniques when the demand for municipal facilities and services has threatened to surpass their ability to supply them. Some of these attempts have been upheld, while others have been stricken down.

In *Matter of Josephs* v. *Town Bd. of Town of Clarkstown* (24 Misc 2d 366), cited by the respondent, the petitioner owned property in a district where the minimum lot area was 40,000 square feet for single-family detached residences. The zoning ordinance provided that the minimum lot requirement could be reduced to 22,500 square feet by special permit obtainable from the Town Board. The ordinance further provided that, in determining whether to grant a special permit, the Town Board would consider existing facilities and then ascertain whether adequate facilities would be available to provide for the needs of future residents. The petitioner, who sought to build on 22,500 square feet, applied to the Town Board for a special permit, but his application was denied. The Town Board found that "'existing school facilities * * * or plans or reasonable possibilities for expansion of such facilities'" (p. 367) were inadequate to provide for the additional needs of future residents in the proposed development. On review it was held that the Town Board clearly had the power to regulate the density of population by minimum lot requirements as long as such requirements were reasonable. The court relied on the express language of sections 261 and 263 of the Town Law and went on to point out that the petitioner had no vested

right to the special permit, stating (pp. 369–370): "By due regulation, his [petitioner's] property is in a district where a minimum lot area of 40,000 square feet is required for residences. Such is declared by the local ordinance to be the proper square foot area for residential lots in the district. It is solely within the discretion of the Town Board as to whether or not the petitioner shall have a special permit having the effect of reducing the lot area requirements and thus increasing the density of population in the district." In my opinion the *Josephs* case illustrates a town's use of its delegated powers to control population density through minimum lot requirements. The ordinance upheld in *Josephs,* however, is clearly distinguishable from the one in the instant case. At bar, the Town Board has sought not only to regulate density, but also to time its population growth rate by imposing, through its point system, restrictions on land use.

In *Albrecht Realty Co.* v. *Town of New Castle* (8 Misc 2d 255) an attempt by a town to relieve an imminent school crisis by classifying nearly all land outside an incorporated village as residential and then limiting the total number of building permits issued for construction in residential districts was held invalid. The court there stated (p. 256): "There is nothing in section 261 of the Town Law that gives the defendant town power to regulate the rate of its growth and the Zoning Ordinance article under attack here is a *direct* regulation of the rate of growth and nothing more " (emphasis supplied).

In *Westwood Forest Estates* v. *Village of South Nyack* (23 N Y 2d 424) a municipality, in amending its zoning ordinance, sought to bar new construction of multiple dwellings throughout the municipality for the express purpose of alleviating a problem resulting from a lack of sewer facilities. The Court of Appeals stated (p. 427): " A municipality has, of course, the power to take appropriate steps to deal with sanitation problems * * *. The instant sanitation problem is, however, general to the community and not caused by the nature of plaintiff's land * * *. It is, therefore, impermissible to single out this plaintiff to bear a heavy financial burden because of a general condition in the community ".

In *Opgal, Inc.* v. *Burns* (20 Misc 2d 803, affd. 10 A D 2d 977, affd. 9 N Y 2d 659) the Special Term, passing upon property which had been rezoned industrial so that the number of residential units and the problems of the school districts could be considerably lessened, stated (p. 806): " Laudable as this objective may be, it cannot be accomplished at the complete or sub-

stantial expense of constitutionally protected property of others ''.

The *Albrecht, Westwood Forest* and *Opgal* cases are examples where municipalities have sought to control population by means of zoning techniques which were in excess of the power delegated to them by section 261 of the Town Law or the virtually identical provisions contained in section 175 of the Village Law.

Section 263 of the Town Law, in addition to indicating that a town's zoning ordinances must be in accordance with its comprehensive plan, sets forth definite considerations which a town must concern itself with when it enacts its zoning regulations. One of these considerations enjoins upon the township the encouragement of '' the most appropriate use of land throughout such municipality ''. At bar, however, the Town of Ramapo prevents the immediate use of land for the specific purpose for which it was zoned, namely, residential. Furthermore, section 261 of the Town Law which is the actual grant of power and specifically enumerates what a town board is empowered to do, does not either expressly or impliedly authorize the time controls imposed on land use under the challenged ordinance. The most compelling argument that can be made on behalf of the town is that the delegated power to regulate and restrict the density of population authorizes the challenged time controls. In my opinion, however, there is a vast difference between regulating population density through such techniques as minimum lot requirements or limitations on multi-residential housing and controlling the time and rate of population growth. In essence, respondent asks us to uphold an ordinance which restricts the free mobility of population until a designated area has available certain necessary municipal facilities. I can find no authority to allow enactment of such an ordinance.

It is not difficult to envision the tremendous hardship and chaotic conditions which may result if many of our up-State municipalities decide to delay the exodus of city residents desirous of leaving their crowded environs and moving into such up-State rural regions. In *National Land and Investment Co.* v. *Easttown Township Board of Adjustment* (419 Pa. 504, 527–528) the Supreme Court of Pennsylvania struck down a town zoning ordinance passed with the avowed purpose of preventing an influx of people into the township with the resulting additional burdens upon municipal services and facilities which such an influx would bring. The majority in *National Land* had this to say about such a zoning ordinance (p. 532) : '' The question posed is whether the township can stand in the way of the natural

forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid.''

In any event, the whole concept of phasing residential development through time controls on land use is pregnant with the notion of acceptable discrimination. This follows from a recognition of the fact that under the challenged ordinance certain plat owners in a residential zoning district will be allowed to build earlier than others. The constitutional requirements of equal protection before the law, however, require that a regulated use within an established zoning district must be applicable to all property located within the district (*Cole* v. *Zoning Bd. of Review of City of East Providence,* 102 R. I. 498). Furthermore, I do not find that such discrimination is ameliorated by the special tax abatements provided for in the challenged ordinance for those persons affected by the restrictions on residential developers, since I am in accord with the conclusion set forth in my colleague Judge HOPKINS' concurring opinion that the Town Board was without constitutional or statutory authority in creating such abatement. Section 247 of the General Municipal Law, the alleged legislative sanction for the tax abatement, was never intended to be used as a tool in an over-all plan delaying the population growth of a township.

In summation, the requirement of the special permit in the challenged ordinance, when viewed with the prerequisites which must be satisfied before such a permit can be obtained, and in the context of the zoning powers set forth in section 261 of the Town Law, leads me to conclude that the Town of Ramapo has usurped power by regulating its population growth in a manner which has not been delegated to it. I am aware of the positions of many legal commentators who have suggested that perhaps new types of controls may be needed to prevent urban sprawl and the problems associated with it. However, the consequences of allowing municipalities to place time controls on their expansion, geared to when the municipalities can provide certain necessary facilities and services, are far-reaching in their ramifications. A delegation of such power to municipalities which is not confiscatory and which additionally confers either a partial or total abatement in tax assessments can, in my opinion, be clearly spelled out in appropriate amendments to the Town Law, the Village Law and the General Municipal Law if such be the intent of the State Legislature. I express no opinion

on whether there should be such delegation of power, since that is a political decision to be made by the Legislature. Suffice it to say that in my opinion the power to place time controls on a municipality's population expansion, as in the instant case, has not yet been delegated.

Accordingly, the judgment should be reversed insofar as appealed from, on the law, without costs; section 46–13.1 should be declared unconstitutional and invalid, since it constitutes an unauthorized assumption of power on the part of the Town Board; and the petitioners' application for preliminary plat approval should be remanded to the respondent for consideration on the merits.

HOPKINS, J. (concurring). I agree with the persuasive reasoning in my brother Justice MARTUSCELLO's opinion. The limitations on the power of a local planning board are recognized by the State Office of Planning Coordination. In describing those limitations it has said that "it is not within the province of the planning board to deny a property owner the right to subdivide his land, but it can attempt to guide the subdivider in the prompt and efficient handling of his land" (Local Planning and Zoning [1969 ed.], Office of Planning Coordination, p. 11).[1]

The town has cast its ordinance in the form of a denial of the right of subdivision of land, except under conditions which cannot be fulfilled by the owner without the precedent or concurrent action of the town. The owner cannot determine the order in which the town shall undertake improvements in roads or sewers or recreational facilities; nor can the town be held even to make the improvements when scheduled under its program, for priorities of services change as years go by, and fiscal needs cannot be frozen beyond review and recall. Thus, the patient owner who relies on a long range capital project program of the town to qualify in a period of years for the subdivision of his land cannot be sure that the improvements will in fact

---

1. The paragraph in which the quoted sentence appears reads as follows:
"Premature land subdivision caused by speculative development has become a serious problem in many localities. This has led to excessive costs to the municipality for public improvement such as streets and sewers and also to a high rate of tax delinquency for vacant lots in these premature subdivisions. In the interests of both the community and the subdivider, the planning board should, by persuasion and by requiring specified public improvements to be added by the subdivider, try to discourage such premature subdivision. It is not within the province of the planning board to deny a property owner the right to subdivide his land, but it can attempt to guide the subdivider in the proper and efficient handling of his land. It can also refuse to approve subdivisions which are considered unsafe because of flood hazards, bad drainage or other unusual topographical conditions."

be made; and the delay first imposed by the ordinance will be further extended by the failure of the town to meet its own schedule.

The town offers for this postponement of the right of subdivision a substitute — a decrease in the assessment of the land. That is, the ordinance provides for the issuance by the Town Board of a " special permit vesting a present right " in the developer to proceed with the subdivision in the year that the town's capital program indicates that the land qualifies under the conditions of the ordinance; this special permit entitles the developer to appeal to the Development Easement Acquisition. Commission for a determination as to the extent to which the assessment shall be accordingly reduced, in the words of the ordinance, " as compensation for the temporary restriction placed in the land " (Zoning Ordinance, § 46–13.1, subd. E).

Assuming that such a substitute would repair the lack of constitutional and statutory authority for the restriction, in this instance it fails, because the town cannot create the substitute. The State Constitution requires that the Legislature shall provide for the supervision of tax assessments (art. XVI, § 2). The Legislature has provided that all real property shall be subject to taxation and assessed at its full value (Real Property Tax Law, §§ 300, 306). Exemptions, both total and partial, must be expressly conferred by the Legislature (*People ex rel. Savings Bank of New London* v. *Coleman,* 135 N. Y. 231, 234; *Matter of Board of Educ. of City of Jamestown* v. *Baker,* 241 App. Div. 574, 575, affd. 266 N. Y. 636). The Town Board by ordinance could not modify the statutory scheme of taxation (*Gautier* v. *Ditmar,* 204 N. Y. 20, 26–27).

The town claims legislative sanction for the substitute in section 247 of the General Municipal Law. But that section is foreign to the exercise of power which the town attempts here. Section 247 is concerned with the acquisition by a municipality of interests in real property for the preservation of open spaces and areas — defined as those spaces and areas characterized by natural scenic beauty or whose present condition would enhance surrounding urban development or the conservation of natural resources. The legislation merely provides that upon the acquisition of such interests the assessment on the land may take account of the restriction of use.[2]

---

2. The town adopted a local law to put section 247 of the General Municipal Law into effect (Local Laws, 1967, No. 1 of Town of Ramapo, known as the Development Easement Acquisition Law of the Town of Ramapo), but its provisions have no reference to zoning or subdivision controls.

Here the town has not acquired any interest in the petitioners' land; and it could not be plainer that the acquisition of interests by the town for the preservation of open spaces and areas is not the purpose of the ordinance which prevents the subdivision of the land. Thus, the town cannot use the statute as a reason to grant a partial exemption from taxation.

` The town, like many suburban municipalities, may find the horns of the dilemma facing it uncomfortably close and pointed —that is, to serve the present needs of the community and at the same time to accommodate the stream of population seeking to enter it. On the one hand, the exercise by the community of delegated authority leads to " a type of Balkanization which is intolerable in large urban areas ", as the President's National Commission on Urban Problems put it (Natl. Commission on Urban Problems, Report: Building the American City [1969], p. 19). On the other hand, the town must be aware of the serious problems that a sudden and unforeseen surge of new residents must precipitate. However, the dilemma is not confined to one community; it is a characteristic of all within the metropolitan region. Hence, the imposition of controls such as those enacted by the town increases the pressure of the outward movement of population from the large urban centers on all other communities within the region. The problems are indeed regional, and not local; and their solution lies within the province of the Legislature rather than within the more parochial vision of the town.[3]

I do not reach the larger question whether the Legislature could constitutionally delegate power to municipalities to regulate the growth of population through subdivisions controls geared to municipal programming of public improvements and to grant corresponding reductions in taxation of the real property so controlled. It is enough for the determination of the present appeal that the Legislature has not delegated those powers to the town and that, absent such powers, the ordinance in issue cannot withstand attack.

LATHAM, J. (concurring). I concur with the opinions of my colleagues, Justices HOPKINS and MARTUSCELLO. It should be noted that the appellants' property is zoned for residential use

3. See Cunningham, Land-Use Control— The State and Local Programs, 50 Iowa L. Rev. 367; Becker, Municipal Boundaries and Zoning: Controlling Regional Land Development, 166, Wash. U. L. Q. 1; Cribbet, Changing Concepts in the Law of the Land Use, 50 Iowa L. Rev. 245; Kaiser and Weiss, Local Public Policy and the Residential Development Process, 32 Law & Contemp. Prob. 232.

and they desire to develop it accordingly. Under the inhibiting language of the amendment under attack, they may be barred from such conforming development for as long as 18 years. In my opinion a governmental freeze for such a conceivable lengthy duration is arbitrary and unreasonable and constitutes a taking of land without just compensation; and is thus prohibited by our Federal and State Constitutions (cf. *Averne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222).

MUNDER, J. (dissenting). I dissent and vote to affirm the judgment, upon the opinion of the late Mr. Justice GALLOWAY at the Special Term. His decision was a recognition of the need for zoning legislation to prevent the haphazard and speculative development of communities without adequate provision for essential public services and facilities.

The population of the Town of Ramapo has increased tremendously in a short period as a by-product of the urban sprawl. The legislation at bar represents an attempt to soften the impact. I view such legislation as a valid exercise of the town's zoning power. The development point system provided for in this legislation is directly related to the town's duly adopted capital budget and capital improvement plans, under which the town has committed itself to completion of public capital projects, including sewerage, drainage, parks, schools, roads, firehouses and other municipal facilities over a maximum period of 18 years. In other words, the Town Board is providing for the orderly growth and development of the town while keeping in mind the public health, safety and welfare (see Town Law, §§ 263, 276). The methods chosen have been found by the Special Term to be reasonable, explicit, nonconfiscatory and in conformity with the town's master development plan. I would uphold it.

HOPKINS and LATHAM, JJ., concur with MARTUSCELLO, J., each with a separate opinion. MUNDER, J., dissents and votes to affirm the judgment insofar as appealed from, with a separate opinion, in which RABIN, P. J., concurs.

Judgment of the Supreme Court, Special Term, dated November 13, 1970, reversed insofar as appealed from, on the law, without costs; section 46–13.1 of the Zoning Ordinance of the Town of Ramapo is declared unconstitutional and invalid; and petitioners' application for preliminary plat approval is remanded to respondent for consideration on the merits.