OPINION OF THE COURT
Martin Evans, J.
Petitioners, Amsterdam Garage Corporation, Consolidated Parking Corporation and Proud Parking Corporation (hereinafter petitioners), have commenced a CPLR article 78 proceeding against the respondents, the Department of Consumer Affairs of the City of New York and Angelo J. Aponte, as Commissioner of the Department (hereinafter Consumer Affairs), alleging that the administrative determination by Consumer Affairs is not supported by the evidence, is unreasonable, arbitrary, capricious, an abuse of discretion and affected by errors of law and that general regulation 15 (2) of the Department of Consumer Affairs is unconstitutional as it permits a warrantless search.
The petition arises out of inspections conducted by inspectors from Consumer Affairs of three garages operated by the respective petitioners. In each case the inspector, upon arrival at the garage, presented himself to the person in charge of the garage and announced that he was there to conduct an inspection of the garage as called for in the License Enforcement Law of the Administrative Code of the City of New York (tit 20, ch 1) and in general regulation 15 of the Department of Consumer Affairs. At each garage the inspector was shown the public areas of the garage and the records/documents required to be maintained by the licensee as well as a letter from the garage owner. The letter shown to the inspector asks the inspector to call and arrange "a mutually convenient time for representatives of management to provide you with the safety necessary when entering designated areas.” Continuing, it also states "As agreed to by Deputy Commissioner Kutzbach of your Department, we will attempt to have our representative meet you as soon as reasonably possible.” The garage manager then advised the Consumer Affairs inspector that a supervisor would be telephoned by the garage manager and *801 would be requested to come to the garage to accompany the inspector on his inspection of the nonpublic areas of the garage. At the Amsterdam Garage the Consumer Affairs inspector waited 90 minutes before leaving when the petitioners’ supervisor had failed to arrive by then. During the other two inspections the preliminary events mirror the Amsterdam inspection except that the inspector waited approximately 20 minutes at the Proud garage and 10 to 13 minutes at the Consolidated garage after completing her review of records/ documents and inspection of the public areas for the arrival of the petitioners’ supervisor who failed to arrive before the inspector left. The Amsterdam inspection was made on January 11, 1986 by Inspector Lyons and the Proud and Consolidated inspections were on January 21, 1986 and February 18, 1986 by Inspector Reed. The petitioners’ supervisor, who was called to conduct the inspector through the nonpublic areas of the three garages, was a Mr. Gomex. The petitioners were served with notice of hearing and charged with violation of general regulation 15 (2) for denying the inspector access to the nonpublic part of the garage.
On March 7 and 21, 1986 an administrative hearing was held by the Department of Consumer Affairs and on May 23, 1986 the Department handed down a decision finding that the petitioners had "by their refusal to allow Departmental Inspectors to complete their assigned inspections and to count the number of cars parked on the premises and did unlawfully interfere with the performance of the Department’s duties, as mandated by the Administrative Code.” The Hearing Officer also found that the suggestions in the licensee’s letter that an appointment be made "would clearly vitiate the very purpose of the inspection; on an inspection by appointment, the Inspector is hardly likely to find a violation of this nature since the Licensee, thus forewarned, would have had the obvious opportunity to ensure that no overparking existed at the pre-arranged date and time.”
Furthermore, the Hearing Officer found that the licensee’s requirement that the inspector wait an open-ended period for the arrival of a supervisor to be unacceptable since it too also permitted possible correction of violations as well as interfered with the inspector’s performance of his other duties.
As noted earlier this article 78 proceeding contains a request for: (1) a determination that the findings by Consumer Affairs are unsupported by the evidence, unreasonable, arbitrary, capricious, an abuse of discretion and affected by errors *802 of law (CPLR 7803) and (2) a decision that general regulation 15 (2) of the Consumer Affairs is unconstitutional.
With regard to the latter issue, the court has repeatedly held that an article 78 proceeding is not the proper way to test the constitutionality of a legislative enactment. (Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 191 [1972], citing Matter of Gold v Lomenzo, 29 NY2d 468, 476; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 458; Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 407; Golden v Planning Bd., 37 AD2d 236, 239, revd on other grounds 30 NY2d 359.) Rather an article 78 proceeding is the proper vehicle to determine if a regulation or ordinance has been applied in an unconstitutional manner (Matter of Kovarsky v Housing & Dev. Admin., supra, citing Matter of Overhill Bldg. Co. v Delany, supra), which is not the issue here.
However, if all proper parties are before the court, as in the instant case, the court may treat the action as one for declaratory judgment and decide if the legislative enactment is constitutional.
A review of the statutes and regulations regarding parking lots and garages in New York City indicates that in 1947 the City Council’s Committee on General Welfare recommended that the Administrative Code of the City of New York be amended to include an article devoted to the licensing and regulation of parking lots and garages. Such an amendment was made with the addition of article 34 to title B, chapter 32 of the Administrative Code (now known as tit 20, ch 2, subch 17 of Administrative Code) which regulates and licenses garages and parking lots including the rates (Administrative Code § 20-324), limitations on the number of vehicles and manner of storage (Administrative Code § 20-327). Within this particular subchapter of title 20, the Commissioner of Consumer Affairs is given authority to "promulgate such rules and regulations as may be necessary to carry out the provisions of this subchapter.” (Administrative Code § 20-330.) And in fact the Commissioner did draft such regulations originally filed with the City Clerk on January 27, 1950 with amendments being made to some- of the regulations thereafter. Within these regulations there is set forth the square footage required to be allocated to each car (reg 3).
The New York City Council has also provided for a unified system to enforce the various licensing laws, e.g., subchapter *803 17, under the jurisdiction of the Consumer Affairs Commissioner by adopting the License Enforcement Law (Administrative Code, tit 20, ch 1). This law also grants the Commissioner in section 20-104 (b) (1), (5) authority to promulgate regulations necessary to "carry out the powers and duties of the department” and to ensure "that the premises complies with all legal requirements necessary to engage in the licensed activity”. Furthermore, section 20-114 (a) specifically calls for the regular inspection of places of business and the filing of reports thereof with the Commissioner.
The Commissioner complied with the directives of the License Enforcement Law (Administrative Code § 20-104) by drafting general regulations. Within these general regulations there is regulation 15, which became effective July 23, 1983 and which provides for the inspection of records and business premises. General regulation 15 states:
"2. The Commissioner or authorized representatives of the Commissioner may enter the business premises of a licensee during business hours for the purposes of:
"(a) Inspecting or examining licensee’s place of business in order to verify compliance with the provisions of Chapter 32 of the New York City Administrative Code and the regulations promulgated thereunder; and * * *
"(c) Inspecting or examining non-public areas of licensee’s place of business for the purposes stated in Paragraph 2 (c) above.
"3. Inspections of the type described above will be conducted at least once in every two-year period”.
General regulation 15 (2), which concerns physical inspections of the premises, in fact implements the requirements of Administrative Code § 20-104 (b) (5) (premises must comply with all legal requirements necessary to engage in licensed activity); § 20-114 (a) (all places of business shall be regularly inspected and reports be made to the Commissioner); and § 20-327 (a) and (b) (no vehicle shall be accepted for parking in excess of the capacity stated in the license and vehicles must be parked in a manner prescribed by rules and regulations of the Commissioner).
In People v Burger (67 NY2d 338, 343 [1986]) the court in considering a search made of a vehicle dismantling business, discussed the question of warrantless searches of commercial premises, said "In order to validate a warrantless administrative search, however, the commercial premises must be part of *804 a pervasively regulated industry and the search itself must be part of a regulatory scheme designed to further an urgent State interest (e.g., Donovan v Dewey, 452 US 594, 599-600, supra; United States v Biswell, 406 US 311, supra; Colonnade Catering Corp. v United States, 387 US 72, supra). Also, the State’s ability to conduct warrantless inspections must be essential to the effectuation of an administrative scheme (Donovan v Dewey, 452 US, at pp 600, 602-603, supra; United States v Biswell, 406 US, at p 316, supra; Bionic Auto Parts & Sales v Fahner, 721 F2d 1072, 1077). Finally, the inspection must be authorized by a valid statute that is carefully limited in time, place and scppe (e.g., Donovan v Dewey, 452 US, at pp 603-604; United States v Biswell, 406 US, at pp 315-316).”
Dating back to 1947 the City of New York has recognized the need to regulate the parking lots and garage industry of the city. Since that time the city through its Administrative Code, i.e., title 20, chapter 1 (License Enforcement Law) and chapter 2, subchapter 17 (Garages and Parking Lots) as well as the respective regulations mandated by these Administrative Code sections, has pervasively regulated this industry. Such inspections as called for in regulation 15 (2) are limited to once per each two-year period and the scope is restricted to all records or documents required to be maintained by the licensee as well as the nonpublic areas of the garage to verify the licensee’s compliance with title 20, chapter 1 and chapter 2, subchapter 17 of the Administrative Code. Furthermore, these inspections are conducted during regular business hours. The long history of the city’s regulation of this industry clearly demonstrates the existence of an "administrative scheme” to achieve regulation of parking lots and garages. In addition, when in 1947 the city government first acted to regulate this industry, it was in response to complaints received during public hearings of numerous abuses including acceptance of cars for parking when the garages and lots were filled to capacity.
Therefore, the petitioner’s motion to declare general regulation 15 (2) unconstitutional is denied.
The sole function of the court in a proceeding brought pursuant to CPLR 7803 is to determine whether an administrative agency!s determination is supported by substantial evidence within the record. (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176 [1978]; Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; Matter of Menoudakos v Berman, 32 AD2d 631 [1st Dept 1969].)
*805 The Department of Consumer Affairs has been given the authority by Administrative Code, title 20, chapter 1 and chapter 2, subchapter 17, as well as subsequent regulations to monitor and inspect the parking lot and garage industry to ensure compliance with standards set forth in the Administrative Code and the agency’s regulations. Included within these provisions, as noted above, is the frequency of inspection, the hours during which it is to be done, and the areas and records that are to be inspected. All these provisions have been filed with the City Clerk and with public notice given as to their existence.
A review of the facts as adduced during the administrative hearing held by Consumer Affairs at which both parties had full opportunity to present their respective positions supports the findings made by the Administrative Hearing Officer of the Department of Consumer Affairs.
Therefore, since the decision by the Hearing Officer of the Department of Consumer Affairs was not arbitrary, capricious, unreasonable, an abuse of discretion, or affected by errors of law, and was supported by the evidence, the petition is denied and the proceeding is dismissed.