MARCUS ASSOCIATES, INC., Appellant, v TOWN OF HUNTINGTON et al., Respondents.

Second Department, April 11, 1977

*Stern, Gillies & Kurtzberg, P. C. (Joseph Stern* of counsel), for appellant.

*Ronald Glickman, Town Attorney (Frank J. Mack* of counsel), for respondents.

HAWKINS, J. The Special Term's determination sustaining the constitutionality of the assailed section of the local zoning ordinance should be affirmed.

Plaintiff originally owned 12 building lots, of which 7 have been improved with industrial plants. This was accomplished in compliance with the requirements of the ordinance. The property was acquired by plaintiff in 1967 and 1968. Upon acquisition, the lots were zoned R-40, i.e., one-acre residential. The subsequent rezoning to I-1—light industry—resulted from the application of plaintiff and others to have 34 industrially

developed areas rezoned. Thirty-one are occupied by single tenants and two have two tenants.

The amendment to the Huntington Town Code (§ 62-6.1, subd 10) provides: "A building or premises shall be used for not more than 3 permitted uses and by not more than three occupants. Each separate use shall occupy no less than 20,000 square feet of building gross floor area. This provision shall not apply to office building uses."

The municipality has aided appreciably plaintiff's efforts to develop the property gainfully, for it previously granted a substantial variance and approved a "resubdivided map". Thus, plaintiff not only has had the property rezoned, but has had variances granted.

The character of the area over the years has changed from a "low density residential" to a "low density industrial" area. In 1969 the property was rezoned from residential one-acre to the I-1 zone. These changes were effected in accordance with a master plan. On August 13, 1974 the zoning ordinance was amended to limit industrial buildings to one use and, on February 25, 1975, the ordinance was amended so as to limit industrial buildings to three permitted uses. The most recent amendment, as aforesaid, permits three uses by not more than three occupants, and further provides that each separate use was to occupy not less than 20,000 square feet; excepted therefrom were office building uses.

Plaintiff, the owner of property in the I-1 light industry district, contends that the said amendment legislates upon matters beyond the power and jurisdiction of the town board in that it fails to advance any of the purposes of zoning enumerated in section 263 of the Town Law; that it bears no reasonable relation to the public health, safety, morals or the general welfare, and is therefore void.

The cardinal precept is that zoning laws are presumptively constitutional; hence the questioner has the burden of proving invalidity whether "beyond a reasonable doubt" or, as conversely phrased, that no reasonable basis exists to sustain constitutionality (see *Shepard v Village of Skaneateles,* 300 NY 115, 118; *Wiggins v Town of Somers,* 4 NY2d 215, 218; *Koff v Incorporated Vil. of Flower Hill,* 29 AD2d 655, affd 28 NY2d 694).

In this regard, two recent opinions by the Court of Appeals are crucial: *Lighthouse Shores v Town of Islip* (41 NY2d 7) and *Matter of Golden v Planning Bd. of Town of Ramapo* (30

NY2d 359). *Lighthouse* holds that if there is an acceptable underlying legislative end sought to be achieved, the ordinance should be sustained. The dissent cites *Lighthouse* for the proposition that "[w]here ' "no reasonable basis at all" ' exists for a challenged ordinance, the ordinance must fall". The preceding sentences of that very paragraph merit quotation in full, for the Court of Appeals was most emphatic in sustaining the presumption of constitutionality (41 NY2d, at pp 11-12): "The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities. as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court's power of inquiry ends."

The burden of establishing unconstitutionality "beyond a reasonable doubt" is quite onerous. As stated in Anderson, New York Zoning Law and Practice (vol 1 [2d ed], p 54):

"§ 2.11.—Beyond a reasonable doubt. The New York courts occasionally have imposed upon parties who question the validity of ordinances a burden greater than that of taking the matter out of the area of fair controversy. In *Wiggins v Somers* [4 NY2d 215, mot. to amend remittitur granted, 4 NY2d 1045], the Court of Appeals said that 'while this presumption [of constitutionality] is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt.' The language, if it is to be literally construed, imposes upon the litigant who challenges a zoning ordinance the same burden of proof as that imposed upon the state in a criminal prosecution."

Respecting the existence of a reasonable basis upon which to sustain the ordinance, the testimony of the municipality's expert witness, Seymour Stillman, is persuasive. This witness' qualifications are most impressive: after majoring in city and regional planning at Cornell, he was awarded a master's degree in city planning by the Massachusetts Institute of

Technology. He has been Director of Planning of Buffalo and, since 1964, has been engaged as a consultant in planning and zoning. He has also taught at several universities and has written several articles in various learned journals on the subject. He testified that in examining the town's zoning ordinance, he considered such basic criteria as the regional pattern of industrial development; use of subject property as related to the over-all pattern; the relationship of particular zoning to the town's comprehensive zoning plan; the adaptability of the subject parcels for the uses and restrictions imposed; and, lastly, the impact of the community's developmental pattern. In sum, the testimony was that the zoning was "clear and consistent" with the town's zoning history and that limited user tenancy was necessary in order to maintain the character of the area. The cross-examination did not impair the testimony in chief; in fact, it fortified his statement that increased municipal services such as sewerage, garbage collection, etc., were functions of multiple tenancies. His testimony afforded a reasonable and cogent basis for the ordinance's validity.

That other legislative techniques—albeit of dubious legality —could have been fashioned, as plaintiff's experts testified, does not vitiate the legislation for, as in *Lighthouse* (pp 11-12): "if any state of facts known or to be assumed, justifies the disputed measure, this court's power of inquiry ends." The point is that rather eminent expert testimony was presented that legitimate governmental purposes were sought to be achieved; thus there exists the requisite foundation upon which constitutionality can rest.

The recurrent theme of the Court of Appeals in passing upon zoning ordinances is set forth in *Matter of Golden v Planning Bd. of Town of Ramapo* (30 NY2d 359, revg 37 AD2d 236, *supra*). That this area of law is fraught with difficulty is illustrated by the several opinions at the Appellate Division reversing Special Term. Each of the Justices voting to reverse felt impelled to write a separate opinion. Two Justices dissented, further demonstrating that difficult zoning cases are neither readily nor easily resolved. The Court of Appeals, in reversing and sustaining the ordinance's constitutionality, stated (p 371): "Even so, considering the activities enumerated by section 261 of the Town Law, and relating those powers to the authorized purposes detailed in section 263, the challenged amendments are proper zoning techniques, exercised for legiti-

mate zoning purposes. The power to restrict and regulate conferred under section 261 includes within its grant, by way of necessary implication, the authority to direct the growth of population for the purposes indicated, within the confines of the township. It is the matrix of land use restrictions, common to each of the enumerated powers and sanctioned goals, a necessary concomitant to the municipalities' recognized authority to determine the lines along which local development shall proceed, though it may divert it from its natural course *(Euclid v. Ambler Co.,* 272 U.S. 365, 389-390, *supra).*"

The over-all view of the Court of Appeals is best presented by quoting its very language in *Golden* (pp 376-377): "The evolution of more sophisticated efforts to contend with the increasing complexities of urban and suburban growth has been met by a corresponding reluctance upon the part of the judiciary to substitute its judgment as to the plan's over-all effectiveness for the considered deliberations of its progenitors (see, e.g., *National Land & Inv. Co. v. Easttown Typ. Bd. of Adj.,* 419 Pa. 504, 521, *supra).* Implicit in such a philosophy of judicial self-restraint is the growing awareness that matters of land use and development are peculiarly within the expertise of students of city and suburban planning, and thus well within the legislative prerogative, not lightly to be impeded".

In essence, *Golden* holds that zoning ordinances, save for rather rare exceptions, will be sustained unless they are directed (p 378) at "immunization or exclusion" which, of course, refers to racial or economic discriminatory practices.

The testimony of Frederick Meyer on behalf of the plaintiff, apart from his gratuitous conclusions as to what constitutes "legitimate purposes of zoning", consists largely of projections as to whether the ordinance would result in lesser density. Whether it may or may not achieve one of the legislative purposes is not determinative of constitutionality. It is not the wisdom or practicality of the ordinance which is to be reviewed judicially, but rather its constitutionality.

The dissenting opinion adverts to the asserted intent to reserve the area for so-called "blue chip" industries. Whatever the terminology employed, it is not congenitally or inherently unconstitutional for a municipality to seek to limit industrial density. Zoning amendments have been sustained where former multiple dwelling zoning was upgraded to one-family homes, for density of population and expanded use may be

controlled or curtailed by zoning (see *Matter of Nattin Realty v Ludewig,* 67 Misc 2d 828, affd 40 AD2d 535, affd 32 NY2d 681).

The area of "expanded zoning concept" is discussed in Rathkopf, The Law of Zoning and Planning (4th ed., § 2.02, pp 2-19 to 2-20). He states:

"It must be noticed that as the concept of the scope of the police power expands in the relation to the demands put upon it by the increasing complexities of civilization, the concept of the purposes of zoning similarly expand. * * *

"There can be no doubt but that the increasing complexities of urban and suburban growth have resulted in new zoning techniques designed to contend with them.[21] They are more sophisticated than the simple subdivision of a community into districts, to control population density and to protect preferred uses of land from other uses considered less desirable or even harmful to residential living. The question arises in each case whether such devices and techniques 'find their basis within the perimeters of the devices authorized and purposes sanctioned under current enabling legislation.'[22]

"21. See Marcus & Groves, The New Zoning: Legal Administrative and Economic Concepts and Techniques (1970).

"22. *Golden v Planning Board of Town of Ramapo,* 30 NY2d 359, 369)."

Although the dissenting opinion discusses the several purposes enumerated in section 263 of the Town Law, and holds that none is applicable, section 261 of the Town Law expressly confers upon towns, *inter alia,* power to regulate "the density of population". That section 261 must be considered in weighing section 263 is evident from the *Golden* case, as was previously noted.

In sum, affirmance lies, for plaintiff has failed to meet its burden of demonstrating that no reasonable basis exists upon which to sustain the ordinance (see *Lighthouse Shores v Town of Islip,* 41 NY2d 7, *supra);* nor that the amendment was contrary to the master plan or that it precluded the use of the property for a purpose to which it was readily adaptable. Having conceded that it was not confiscatory, plaintiff acknowledges that a line had to be drawn somewhere in order to prevent the proliferation of multiple tenancies.

"But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion,

however, is a legislative, not a judicial, function" *(Village of Belle Terre v Boraas,* 416 US 1, 8).

The municipality's legislation is not *ultra vires,* for its powers so to legislate are derived from sections 261 and 263 of the Town Law.

The industrial park has developed a "blue chip" character and is considered one of the most attractive industrial areas on Long Island, if not in New York State. The amended zoning ordinance promotes the general welfare, for it is reasonably related to the preservation of this area's character, the regional pattern of the industrial development, the Town of Huntington's comprehensive plan and the ready adaptability of plaintiff's property for development thereunder. It is not difficult to predict uncontrolled development having a deleterious effect and an adverse impact on the rest of the area if this predominantly single-tenanted, large-floor area pattern were changed. There is a reasonable basis for the existence of the challenged ordinance.

Plaintiff having failed to meet its requisite burden of establishing that no reasonable basis exists to sustain the constitutionality of the ordinance, affirmance lies. However, the judgment must be modified to comply with the requirements of a declaratory judgment action (see *Lanza v Wagner,* 11 NY2d 317, 334).

MARGETT, J. (dissenting). The sole issue is whether it was proper exercise of the defendant town's zoning powers to restrict the occupancy of industrial buildings in the town's I-1 light industrial district to not more than three permitted uses, by not more than three occupants, and further providing that no use shall occupy less than 20,000 square feet of building area.

It should be noted at the outset that defendant's I-1 light industrial district consists of land along Route 110, a main thoroughfare relatively near the Long Island Expressway, with a minimum lot area of six acres and a maximum coverage by a building of 30% of the lot. Set-back and parking requirements, as well as regulations with respect to off-street loading areas, have insured an attractive, well designed industrial development.

In February, 1975, the Huntington Town Board amended that portion of the town code dealing with the I-1 light industry district by adding thereto subdivision 10. The addi-

tion reads as follows: "A building or premises shall be used for not more than 3 permitted uses and by not more than three occupants. Each separate use shall occupy no less than 20,000 square feet of building gross floor area. This provision shall not apply to office building uses."

Plaintiff, the owner of property in the I-1 light industry district, contends that the said amendment legislates upon matters beyond the powers and jurisdiction of the town board in that it fails to advance any of the purposes of zoning enumerated in section 263 of the Town Law; that it bears no reasonable relation to the public health, safety, morals or the general welfare, and is therefore void.

At the trial, Frederick Meyer, a professional planner called by the plaintiff, testified that the amendment in question has no effect on set-back requirements, landscaping, building facades or parking. He stated that the amendment did not limit the number or density of employees, since one sewing machine operation, with people sitting side by side at sewing machines, would result in more density than several warehouse operations in the same building. He alluded to the public hearing on the amendment, wherein the former Supervisor of the town spoke of the objective of getting "blue chip" industries into the area; Meyer expressed the opinion that such an objective was not a legitimate purpose of zoning. In this respect, he noted that there was very little land left in Huntington for development by industries of under 15,000 square feet and that the available land was not very desirable.

Mr. Meyer further testified that if density control was the problem, the town could more logically limit the number of employees per shift or per acre. If the town was afraid of the proliferation of signs outside of industrial buildings, it could legislate appropriate regulations. Entrances or loading docks could be confined to the sides or rear portions of buildings. In short, the witness testified that the subject amendment failed to accomplish any of the traditionally accepted purposes of zoning.

William E. Greiner, a real estate broker, testified that the average industrial requirements in the area were for between 7,500 and 30,000 square feet. He noted that space requirements for industry change with the financial health of the particular business, and cited instances where small industries within a building would seek to expand, or where larger companies would have to retrench by subleasing a portion of

their leased space. He described the subject amendment as decreasing the desirability of an industrial building since its tenant would be faced with an inflexible situation. Finally, he stated that the amendment could result in a greater number of vacancies during a "declining market" because a financially troubled company would have to move completely if it were not permitted to get rent relief by subletting a portion of its leasehold.

Defendant's witness, a planning and zoning consultant, agreed that the subject amendment would have no effect on building size; no effect on the area of parking; and no effect on landscaping. However, he felt that there is a "tendency" to have a net increase in traffic with an increase in the number of industrial tenants. Furthermore, he felt that there would be less sewerage and less garbage collected with fewer tenants.

Special Term held that the town board had authority to enact the subject amendment and that section 263 of the Town Law need not be "literally construed"; that the validity of the zoning amendment was "fairly debatable" and that plaintiff had failed to meet its burden of establishing that the amendment is unconstitutional beyond a reasonable doubt. I disagree.

Although an exceedingly strong presumption of constitutionality applies to zoning ordinances (see, e.g., *Lighthouse Shores v Town of Islip,* 41 NY2d 7), courts must be careful lest the presumption of validity become virtually irrebuttable and the burden of proof upon a landowner so onerous as to foreclose, for all practical purposes, his avenue of redress (see *Mary Chess, Inc. v City of Glen Cove,* 18 NY2d 205, 209). Where " 'no reasonable basis at all' " exists for a challenged ordinance, the ordinance must fall *(Lighthouse Shores v Town of Islip, supra,* p 12). Furthermore, zoning properly affects, and only in the manner prescribed, those purposes detailed under section 263 of the Town Law *(Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359). That section is broadly written and, at a minimum, a zoning ordinance must promote the "general welfare".

The credible testimony before Special Term conclusively established that there was no reasonable relationship between the challenged amendment and any of the specifically enumerated purposes of zoning contained in section 263 of the Town Law. The amendment is not rationally calculated to "lessen congestion in the streets" or "to secure safety from fire, flood,

panic and other dangers". Nor is it calculated to "prevent the overcrowding of land; to avoid undue concentration of population; [or] to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements" (see Town Law, § 263). No relationship between the number of industrial tenancies and density of population was convincingly established, and certainly no correlation between minimum floor area and any of the afore-mentioned traditional purposes of zoning was substantiated. This conclusion is underlined by the fact that office buildings, which tend to have more employees and more cars than industrial buildings, may have an unlimited number of tenants. Nor would the "adequate light and air" currently enjoyed by buildings in defendants' I-1 district be adversely affected by smaller and more numerous tenancies, since defendants' six-acre zoning requirement remains intact as does its provision for a maximum of 30% lot coverage. Therefore the amendment must stand, if at all, on the propositions (a) that it is reasonably related to the purpose of attracting and maintaining "blue chip" industries, and (b) that such purpose is a valid one which promotes the "general welfare" of the community.

A threshold question arises as to what is a "blue chip" industry. A review of the record fails to disclose any concrete definition, although, presumably, "blue chip" industries are to be contrasted with "fly-by-night gypsies", referred to by the former Town Supervisor at the public hearing on the amendment. Obviously, since certain minimum floor area requirements have been enacted by the town, a "blue chip" industry is one which requires 20,000 or more square feet, while a "fly-by-night gypsy" is one which requires less than 20,000 square feet.[1]

I would reject any such classification as arbitrary and unreasonable. The quality of a business as a taxpayer, as a community employer, and as a good neighbor should not and cannot be determined merely by the amount of floor area it requires. Large industries can prove to be unstable and, in fact, one of the plaintiff's witnesses alluded to the fact that a financially troubled industry might have to move completely,

---

1. The ordinance is obviously geared toward eliminating anything but "big" industry. It might be noted that if an owner were to utilize the full buildable area of a six-acre lot, a one-story building would cover approximately 72,000 square feet. Assuming two tenants each leased 20,000 square feet of space, full occupancy could only be achieved by finding a tenant interested in 32,000 square feet—four-fifths of an acre.

given the inflexible sort of ordinance here under consideration. Indeed, it is not at all surprising that in the two reported cases which have considered similar floor area minimums for commercial enterprises,[2] the courts have summarily struck down such requirements *(City of North Miami v Newsome,* 203 So 2d 634 [Fla]; *Ridgeview Co. v Board of Adjustment of Borough of Florham Park,* 57 NJ Super 142).

In addition, in the light of the lack of land available in the Town of Huntington for development by small industries, the subject amendment comes perilously close to being a "prohibition" of such small industries. A prohibition or complete exclusion of any use not inherently obnoxious must be regarded as of doubtful validity (8 McQuillin, Municipal Corporations [3d ed rev], § 25.119b). While small industries are not totally excluded from the town, the purpose of the subject amendment—that is, to exclude small industries in favor of large ones—must be carefully scrutinized by reason of its exclusionary character (see *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359, 378, *supra).* The record is devoid of any public benefit to be derived from the arrival of only large corporations, and is equally devoid of any detriment to be incurred if smaller industries occupy portions of the buildings in defendants' I-1 district. This is particularly so because the six-acre lot minimums, as well as the building coverage, set-back, and parking requirements remain intact. Thus the character of the I-1 zone cannot reasonably be expected to change merely because smaller industries shall have been given an opportunity to occupy some of the more desirable industrial land in the town.

COHALAN, Acting P. J., and RABIN, J., concur with HAWKINS, J.; MARGETT, J., dissents and votes to reverse the judgment and to declare subdivision 10 of section 62-6.1 of the Zoning

---

2. Minimum floor area requirements have been upheld for residential zones (see Ann 96 ALR2d 1409, and cases cited therein), but have been sharply criticized where the minimum size standard is drafted without regard to the number of occupants (see, e.g., Haar, Zoning for Minimum Standards: The Wayne Tonwship Case, 66 Harv L Rev 1051 [1953]). The "exclusionary" aspects of such minimum floor area requirements, in the residential sphere, have been condemned by the commentators (see, e.g., Segregation of Residential Areas Along Economic Lines: Lionshead Lake Revisited, 1969 Wis L Rev 827-847; Haar, Wayne Township: Zoning For Whom?—In Brief Reply, 67 Harv L Rev 986 [1954]). In the case at bar, the minimum floor space requirement has been set with no regard to the number of occupants and the sole logical purpose would appear to be the exclusion of smaller industries in favor of larger ones.

Ordinance of the Town of Huntington illegal and void, with an opinion, in which MOLLEN, J., concurs.

Judgment of the Supreme Court, Suffolk County, entered January 12, 1976, modified, on the law, by deleting the second decretal paragraph thereof and substituting therefor a provision declaring that plaintiff has not met its burden of proving the unconstitutionality of subdivision 10 of section 62-6.1 of the Zoning Ordinance of the Town of Huntington. As so modified, judgment affirmed, with one bill of costs payable by plaintiff to defendants.